**In the Matter of TOM'S FOODS INC., Debtor.**

**No. 05–40683 RFH.**

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

July 13, 2006.

John T. Sanders, IV, J. Robert Williamson, Atlanta, GA, for Responsible Officer of Tom's Foods Inc.

Jason J. DeJonker, McDermott Will Emery LLP, Chicago, IL, Barbara Ellis–Monro, David M. Fass, Atlanta, GA, for Heico Holding, Inc.

Frank W. DeBorde, Daniel P. Sinaiko, Atlanta, GA, Ira S. Dizengoff, David P. Simonds, Patrick C. Schmitter, Charles D. Riely, New York, NY, for Ad Hoc Committee of Noteholders.

Joseph B.C. Kluttz, Charlotte, NC, for Lance, Inc.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Eugene I. Davis, "Responsible Officer" for Tom's Foods Inc., Debtor,[1] filed on April 19, 2006, his "Motion Of Eugene I. Davis, Responsible Officer For Tom's Foods Inc., For An Order Authorizing Examination Pursuant To Bankruptcy Rule 2004 and Requiring The Production Of Documents." The Responsible Officer seeks to compel for examination the attendance of a designated representative of Heico Holding, Inc., ("Heico"). The Responsible Officer also seeks the production of certain documents by Heico.[2] Heico filed on May 4, 2006, its "Motion of Heico Holding, Inc., for Protective Order." The Responsible Officer's motion came on for a hearing on May 9, 2006. At the hearing, the Court suggested that counsel submit briefs on the issues presented in Heico's motion for protective order.

Heico filed on May 23, 2006, a memorandum in support of its motion for protective order.[3] The Responsible Officer filed on June 7, 2006, a memorandum in opposition to Heico's motion. The Ad Hoc Committee of Noteholders also filed on June 7, 2006, a memorandum in opposition to Heico's motion. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

The Responsible Officer, in his motion to compel, contends that employees or agents of Heico removed certain documents from Debtor's corporate offices. The Responsi-

---

1. Mr. Davis is responsible for "winding up" the affairs of Debtor, which has liquidated most of its assets.

2. Heico was the major shareholder of Tom's Foods Holdings, which in turn was the major shareholder of Tom's Foods Inc., Debtor. Memorandum In Support Of Preserving Attorney–Client Privilege For Joint–Defense

Documents, p. 4, (filed May 23, 2006), Docket No. 962.

3. Heico's memorandum is joined in by Rolland G. Divin, Stanley H. Meadows, Michael E. Heisley, Emily Heisley—Stoeckel, Andrew G.C. Sage, II, and Damien Kovary.

ble Officer contends that the documents are property of Debtor's estate. Heico has returned most of the documents.

The parties have resolved most of the issues presented in Heico's motion for protective order. The only remaining issue is whether certain documents are protected by the attorney-client privilege and the joint-defense privilege. Heico refuses to return these documents.[4] Heico contends the attorney-client privilege protecting the documents belongs to third parties and not to Debtor. A privilege log[5] of the documents in dispute is attached as Exhibit A to Heico's memorandum dated May 23, 2006. The parties agreed at the hearing held on May 9, 2006, that the Court could review the documents *in camera*.

The documents in dispute are ten e-mails sent by "Ron Divin."[6] The e-mails are dated from February 22, 2005, through May 11, 2005. Mr. Divin was, at the relevant time, the president, CEO, and a director of Debtor. The e-mails were sent to Stanley Meadows, an attorney who served on Debtor's Board of Directors. Nine of the e-mails were also sent to other individuals. Five of the e-mails were sent by "blind copy" to other individuals. The "other individuals" who received various e-mails were three of Debtor's directors,[7] six officers of Debtor, four persons associated with Heico, and one person who owned 20 percent of Tom's Foods Holdings and who had a contractual right to appoint a member of Debtor's Board of Directors.[8] Four

of the e-mails are marked "Attorney–Client Privilege."

The documents in dispute do not include Mr. Meadow's responses to the ten e-mails sent by Mr. Divin. The e-mail dated February 22, 2005 states that Mr. Meadows was "on Heico's board and Tom's [Debtor's] board." The e-mail dated March 25, 2005, states that Mr. Meadows was "the Company's [Debtor's] attorney in such matters...."

Debtor was having severe financial problems when Mr. Divin sent the e-mails to Mr. Meadows.[9] Heico contends that certain creditors of Debtor, the "Noteholders," were threatening Mr. Divin and other officers and directors of Debtor with legal action and personal liability. Heico contends that Mr. Divin was seeking legal advice on how to deal with the threats. The Responsible Officer contends the e-mails are not privileged and demands that the e-mails be turned over to him.

■■■ "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential. In order to show that communications made to an attorney are within the privilege, it must be shown that 'the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance.' The key question in determining the existence of a privileged communication is "whether the

---

4. It is unclear whether Heico or some other party currently has possession of the documents at issue.

5. Fed.R.Civ.P. 26(b)(5) (party claiming that material is privileged shall describe nature of the material without revealing information itself).

6. Ron Divin's full name is Rolland G. Divin.

7. Heico contends that Mr. Meadows "represented" two of the three directors.

8. Memorandum In Support Of Preserving Attorney–Client Privilege For Joint–Defense Documents, p. 4, (filed May 23, 2006), Docket No. 962.

9. Debtor filed on April 6, 2005, a petition for relief under Chapter 11 of the Bankruptcy Code.

client reasonably understood the conference to be confidential." ' " *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir.), *cert. denied* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991) (internal citations omitted)

■ The attorney-client privilege does not apply when the attorney is asked for business advice rather than for legal advice. *United States v. Rowe,* 96 F.3d 1294, 1297 (9th Cir.1996); *In re Walsh,* 623 F.2d 489, 494 (7th Cir.), *cert denied* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *Olender v. United States,* 210 F.2d 795, 806 (9th Cir.1954); *United States v. Loften,* 507 F.Supp. 108, 112 (S.D.N.Y.1981). *See also In re Grand Jury Investigation,* 842 F.2d 1223 (11th Cir.1987) (information taxpayer gave to his attorney for purposes for preparing tax returns was not privileged); *United States v. Davis,* 636 F.2d 1028, 1044 (5th Cir., Unit A), *cert denied* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) (attorney who acts as his client's business advisor is not acting in a legal capacity and information is not privileged).

In *In re Grand Jury Subpoenas,*[10] Intervenor was the president and CEO of a hospital. Joe Doe and Jane Roe provided legal services to the hospital. Intervenor and the hospital became targets of a federal grand jury investigation. The grand jury issued subpoenas seeking the testimony of attorneys Doe and Roe. Intervenor moved to quash the subpoenas on the basis of his relationship with the attorneys in his individual capacity, independent of the attorneys' relationship with the hospital and its officers in their official capacities. The Tenth Circuit Court of Appeals stated:

> Any privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not to the officer. . . .

The Second and Third Circuits have employed the following test to determine whether an officer may assert a personal privilege with respect to conversations with corporate counsel despite the fact that the privilege generally belongs to the corporation:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

A personal privilege does not exist merely because the officer "reasonably believed" that he was being represented by corporate counsel on an individual basis. In certain circumstances, reasonable belief may be enough to create an attorney-client *relationship,* but it is not sufficient here to create a *personal* attorney-client *privilege.*

144 F.3d at 658–59.

■ "[The joint-defense privilege is] an exception to the general rule that the at-

10. 144 F.3d 653 (10th Cir.), *cert denied* 525 U.S. 966, 119 S.Ct. 412, 142 L.Ed.2d 334 (1998).

torney-client privilege is waived upon the voluntary disclosure of the privileged information to a third party. The joint-defense privilege allows parties who share unified interests to exchange privileged information to adequately prepare their cases without losing the protection afforded by the privilege." *Indiantown Realty Partners, L.P. v. Brown–Harward, (In re Indiantown Realty Partners. L.P.)* 270 B.R. 532, 539 (Bankr.S.D.Fla.2001).

■ Turning to the case at bar, the Court, from its *in camera* review, is not persuaded that the e-mails at issue are protected by the attorney-client privilege or the joint-defense privilege. The e-mails were widely distributed by Mr. Divin. Several e-mails were sent to persons who were not officers or directors of Debtor. Six e-mails were sent to persons affiliated with Heico, an entity separate and distinct from Debtor. Five e-mails were sent to persons by blind copy. The Court is not persuaded that the e-mails were confidential communications between Mr. Divin and Mr. Meadows.

In the Court's view, the e-mails sought guidance from Mr. Meadows on how Debtor's Board of Directors and management should respond to Debtor's financial distress. The substance of the e-mails concerned matters within Debtor's business affairs.

The Court is not persuaded that the e-mails at issue are protected by the attorney-client privilege or the joint-defense privilege.

An order in accordance with this memorandum opinion shall be entered this date.