Opinion issued October 7, 2014.



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00515-CV

————————————

**CHENIERE ENERGY, INC., CHARIF SOUKI, INDIVIDUALLY, AND GREG RAYFORD, INDIVIDUALLY, Appellants**

**V.**

**AZIN LOTFI, Appellee**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2013-12735

## O P I N I O N

Appellants filed a motion for rehearing of our memorandum opinion of June 10, 2014. Their motion for rehearing is overruled. The memorandum opinion of June 10, 2014, is withdrawn, and the following substitute opinion is issued in its place.

Azin Lotfi sued her employer, Cheniere Energy, Inc., claiming her employment was wrongfully terminated. She also sued two of her co-workers, Charif Souki and Greg Rayford, for tortious interference with her employment at Cheniere.

In this accelerated appeal, Souki and Rayford challenge the trial court's denial of their motion to dismiss the claims against them under Chapter 27 of the Civil Practice and Remedies Code, which is an anti-SLAPP statute entitled "Actions Involving the Exercise of Certain Constitutional Rights" and commonly referred to as the Texas Citizens' Participation Act (TCPA). *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011 (West Supp. 2014).[1]

Souki and Rayford contend that (1) they properly invoked the TCPA by establishing, by a preponderance of the evidence, that Lotfi's claims against them are related to their exercise of the "right of association" and (2) Lotfi failed to present clear and specific evidence to support each element of her prima facie case of tortious interference to avoid summary dismissal. We affirm.

---

[1]   The TCPA authorizes this interlocutory appeal. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *San Jacinto Title Servs. of Corpus Christi, LLC. v. Kingsley Props., LP.*, No. 13–12–00352–CV, 2013 WL 1786632 (Tex. App.—Corpus Christi Apr. 25, 2013, pet. denied); *cf. Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14–12–00896–CV, 2013 WL 407029 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order) (finding jurisdiction over order granting motion that remained interlocutory due to pending counterclaims).

**Background**

Lotfi, Cheniere's former assistant general counsel, sued the company for "breach of contract, fraud, fraud in the inducement, unjust enrichment, and pending disability discrimination and retaliation claims under chapter 21 of the Texas Labor Code." Lotfi claimed that she was fired from Cheniere in retaliation for reporting improper activities within the company, including unauthorized disclosures of confidential company information to the son of Cheniere's CEO and board chairman. In addition to suing her former employer, Lotfi asserted a tortious interference claim against Cheniere's CEO, Charif Souki, and its senior vice president and general counsel, Greg Rayford.

Souki and Rayford moved to dismiss the tortious interference claim, arguing that it was a frivolous suit brought in response to their exercise of the "right of association" as defined in the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2) (defining "right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.").

In deciding whether to grant a motion to dismiss under the TCPA, the statute directs the trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). Lotfi filed a response to Souki and Rayford's motion to dismiss, but

3

neither side filed affidavits. Thus, based on the pleadings but without any additional evidence, the trial court denied the Souki and Rayford's motion to dismiss. They appeal that order.

**The Text and Stated Purpose of the TCPA**

The TCPA is an anti-SLAPP law. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation," which are suits filed against politically and socially active individuals—not with the goal of prevailing on the merits but, instead, of chilling those individuals' First Amendment activities. *See* George W. Pring & Penelope Canan, *Strategic Lawsuits Against Public Participation ("SLAPPS"): An Introduction for Bench, Bar and Bystanders*, 12 Bridgeport L. Rev. 937, 938 (1992). Anti-SLAPP statutes have been enacted in several states over the past two decades to "deter lawsuits . . . brought primarily to chill the valid exercise" of First Amendment rights. *Barron v. Vanier*, 190 S.W.3d 841, 843 (Tex. App.—Fort Worth 2006, no pet.). They do so by establishing a mechanism for early dismissal of frivolous lawsuits that threaten the free exercise of First Amendment rights. *See Fitzmaurice v. Jones*, 417 S.W.3d 627, 629 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Rehak*, 404 S.W.3d at 719.

Section 27.003 of the TCPA contains the dismissal provision Souki and Rayford seek to invoke:

> If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

Tex. Civ. Prac. & Rem. Code Ann. § 27.003. The Texas Legislature expressly stated its purpose for enacting this anti-SLAPP statute:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

*Id*. § 27.002. The Legislature defined the rights covered by the statute. *See id*. § 27.001. The "exercise of the right of association" is defined in the TCPA as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id*. § 27.001(2).

Souki and Rayford contend that Lotfi's tortious interference claim against them was "based on, relate[d] to, or . . . in response to" their right of association and was, therefore, subject to summary dismissal. *See id.* § 27.003. Souki and Rayford argue that they have met their evidentiary burden, not through affidavit evidence concerning the substance and purpose of a communication between them that would qualify as an exercise of the right of association but, instead, by the mere fact that Lotfi and Rayford held positions as in-house counsel at Cheniere:

5

Lotfi's tortious interference claim against Souki and Rayford is directly predicated upon the attorney/client communications that took place between Souki (the client representative) and Rayford (the attorney). Furthermore, those confidential communications directly concerned whether to continue to retain Lotfi as one of Cheniere's lawyers (i.e., whether to continue to associate with Lotfi). Thus, the tortious interference claim is necessarily and directly based on, related to, or in response to Appellants' exercise of the right of association.

### Standard of Review

We consider the parties' pleadings and affidavits when reviewing a ruling on a TCPA motion to dismiss. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). Souki and Rayford bore the initial burden of demonstrating the TCPA's applicability to Lotfi's claim against them. *See id.* § 27.005(b); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). They were required to show by a preponderance of the evidence that Lotfi's claim was based on, related to, or in response to their exercise of the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). This inquiry is a legal question we review de novo. *Newspaper Holdings*, 416 S.W.3d at 80. Only if we conclude Souki and Rayford met their burden, do we analyze whether Lotfi met her burden to establish by "clear and specific evidence" the elements of her prima facie case against them to avoid dismissal. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

Statutory construction is a question of law we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). When construing a statute, our

objective is to determine and give effect to legislative intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). In determining the Legislature's intent, we look to the plain meaning of the statute's words. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840–41 (Tex. 2007). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We cannot give one provision meaning out of harmony or inconsistent with other provisions, even if it might be susceptible to such a construction standing alone. *Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC.*, No. 14-12-00896-CV, 2013 WL 407029, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, order). Additionally, we "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." *Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

### Souki and Rayford Fail to Meet Their Burden to Obtain Dismissal

The only relevant pleadings included in the appellate record are Lotfi's amended verified petition, Souki and Rayford's motion to dismiss, and Lotfi's response. Souki and Rayford chose not to submit affidavits in support of their motion to dismiss; therefore, their contention that they communicated when joined together to act in furtherance of a common interest remains unverified. Instead,

7

they rely on Lotfi's pleading to meet their evidentiary burden, pointing us specifically to paragraphs 9, 10, 11, 15, and 21 of Lotfi's verified petition. The facts alleged by Lotfi in these paragraphs are summarized as follows:

- Lotfi started at Cheniere in September 2011 after being personally recruited by Rayford;

- Lotfi raised violations of Cheniere's *Code of Business Conduct and Ethics*, documentation and accounting irregularities, and other compliance issues, which lead to her termination in retaliation;

- the company initially stated it would pay Lotfi the full amount of company stock owed which, according to Lotfi, was only possible under the Restricted Stock Grant Agreement if she were being terminated "without Cause," then, quickly thereafter, the termination was revoked;

- Lotfi received "one of the highest" year-end bonuses given to a non-senior executive in December 2012 and did nothing to warrant a "for Cause" termination; and

- Souki and Rayford made the decision to terminate Lotfi; they exacted revenge on her; and the claim that she was fired for "cause" is false.

Lotfi responds that Souki and Rayford "have not provided any evidence to establish that the instant lawsuit was filed in response to the exercise of Souki and Rayford's First Amendment rights, and clearly they have not met the preponderance of evidence standard." In other words, she contends that Souki and Rayford's reliance on the factual assertions in her pleading is inadequate to establish that a communication occurred, that Souki and Rayford were joining

8

together to collectively act in a common interest—as is required to meet the statutory definition of the exercise of the right of association—or, finally, that her claim relates or is in response to an exercise of the right of association.

Only one of the five factual assertions relied upon by Souki and Rayford could be read to indicate that a communication occurred. The last assertion is that Souki and Rayford "made the decision" to terminate Lotfi and, in doing so, "exacted revenge" on her. It may be that Souki and Rayford's decision was the result of (1) "a communication" (2) "between individuals who join together" (3) for the purpose of expressing, promoting, pursuing, or defending their "common interests." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2). But the record supports alternate conclusions as well. For example, Souki and Rayford may have had divergent interests in seeking Lotfi's removal from the company: Souki arguably could have had a personal interest in dismissing Lotfi given Lotfi's allegation that Souki's son was given confidential company information, whereas Rayford's interest in having Lotfi dismissed could have been to further the financial interests of Cheniere given that dismissal for cause invalidated Lotfi's right to merit-based bonus compensation. Without evidence on the matter, the extent to which Souki and Rayford acted in furtherance of a common interest is simply unknown.

9

Because we are to view the pleadings and evidence in the light most favorable to the non-movant, we conclude that the limited assertions in Lotfi's pleading fail to meet the movants' burden of establishing that they had a communication, they acted in furtherance of a common interest, and that Lotfi's claim against them is related to their exercise of the right of association. *See Newspaper Holdings*, 416 S.W.3d at 80. Absent affidavit evidence supporting their contentions, Souki and Rayford have failed to meet their burden to obtain dismissal.

**Evidentiary Burden Cannot be Met by Reliance on Attorney Status**

Souki and Rayford attempt to avoid the conclusion that they failed to meet their evidentiary burden by relying on Rayford's and Lotfi's status as attorneys to bridge the evidentiary gap. They argue that "every court to have considered the issue has recognized that the constitutionally-protected right of association applies directly to both a client's choice of legal counsel to represent and advise it, and a client's interactions with its chosen legal counsel." Souki and Rayford explain their contention that interaction with legal counsel invokes the right to association as follows:

> [I]t was not necessary for Appellants to offer evidence of the specific communications between Souki and Rayford. Nor, for that matter, should a party ever have to disclose the details of what are indisputably privileged communications between corporate officers and the corporate general counsel to establish that their

communications constitute the exercise of the right of association under the TCPA.

. . .

Because Rayford was the company's lawyer, the discussions between him and Souki about Lotfi, and about whether to continue to retain Lotfi as a lawyer, are classic examples of attorney/client consultations that constitute the exercise of the right of association. Moreover, because the discussions and the decision actually concerned the selection of legal counsel, they independently constituted the exercise of the right of association . . . .

We do not agree that a bare assertion of counsel involvement can meet Souki and Rayford's evidentiary burden to establish that a communication occurred, that Souki and Rayford were joined together to collectively pursue common interests, or that Lotfi's suit was related to their exercise of the right of association. Nor do we agree that Souki and Rayford can be absolved from meeting their evidentiary burden by arguing that providing such evidence would also reveal "indisputably privileged communications."

Rayford wears two hats at Cheniere: he is both the general counsel and a senior vice president. Given his dual roles, his view on whether it was in the company's interest to retain Lotfi as an employee and any advice he may have provided on that issue is not, per se, legal advice. *See* Derek Lisk, *When Does the Texas Attorney-Client Privilege Protect Communications with In-House Counsel?*, 68 Tex. B.J. 386, 387 (2005) ("In-house counsel frequently wear more than one hat, performing other duties in addition to providing legal services."); *see also*

11

*United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981) (attorney who acts as his client's business advisor is not acting in legal capacity); *In re Tom's Foods Inc.*, 345 B.R. 795, 798–99 (Bankr. M.D. Ga. 2006) (holding that communications with attorney serving on corporation's board of directors were seeking business advice, not legal advice).

Rayford's status as corporate counsel does not excuse Souki and Rayford from their burden to prove they had a qualifying communication and joined to pursue a common interest. If their contention was that their communication involved a privileged, attorney-client communication, they could have stated so in an affidavit; yet they failed to provide an affidavit in support of their motion to dismiss. *Cf.* 4A West's Tex. Forms, Commentary, Business Litigation § 24.2.11.60 (2d ed. June 2014) ("Counsel is well-advised to file one or more Affidavit(s) based on this form to accompany [an] Anti-SLAPP Motion to Dismiss."); TEX. R. EVID. 503 (lawyer-client privilege); *Borden, Inc. v. Valdez*, 773 S.W.2d 718, 720–21 (Tex. App.—Corpus Christi 1989, no writ) ("[N]ot all statements and communications made by a client to an attorney are privileged, and the burden is on the party resisting discovery to show that the communication was, in fact, protected by the privilege.").[2]

_____

[2]     *See also Pownell v. Credo Petroleum Corp.*, No. 09-CV-01540-WYD-KLM, 2011 WL 1045418, at *2 (D. Colo. Mar. 17, 2011) (stating that "the attorney-client privilege does not protect communications related to business advice"); *Baptist*

12

Without an affidavit to establish either that a qualifying communication occurred or that a privileged attorney-client communication occurred regarding Cheniere's choice of legal counsel, Souki and Rayford's reliance on Rayford's status as general counsel does not meet their evidentiary burden. To hold otherwise would be to create a presumption that every communication with an in-house attorney meets the TCPA's definition of the "exercise of the right of association" and any claim "related to" such communications is subject to summary dismissal. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2). Accepting that the TCPA has such a broad reach would (1) require us to ignore the TCPA provision specifically requiring evidence in support of a motion to dismiss and (2) be contrary to the explicitly stated purpose of the statute, namely, to *balance* the protection of First Amendment rights against the right all individuals have to file lawsuits to redress their injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(b), 27.002; *Direct Commercial Funding*, 2013 WL 407029, at *2 (rejecting statutory construction that causes provision to be out of harmony or inconsistent with other provisions); *Columbia Med. Ctr. of Los Colinas*, 271 S.W.3d at 256.

---

*Health v. BancorpSouth Ins. Servs., Inc.*, 270 F.R.D. 268, 276 (N.D. Miss. 2010) (stating that, for questions of privilege in a corporate setting, "the critical inquiry is whether any particular communication facilitated the rendition of predominantly legal advice or services to the client"); *In re Tom's Foods Inc.*, 345 B.R. 795, 798 (Bankr. M.D. Ga. 2006) (holding that communications seeking business advice were not protected by attorney-client privilege); *see also* Restatement (Third) of Law Governing Lawyers § 68 (2000) (requiring a communication to be "for the purpose of obtaining or providing legal assistance" to invoke the attorney-client privilege).

Indeed, Lotfi's lawsuit against Cheniere, Souki, and Rayford does not in any way implicate the Legislature's express declaration of the purpose of this statute: to protect "the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see Jardin v. Marklund*, 431 S.W.3d 765, 770–73 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (stating that TCPA's legislative history, purpose, language, and context all support conclusion that "exercise of the right of association" as defined by TCPA requires that communication concern public interest and does not apply to private communications); *but see Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *2 n.1 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.) (stating that text of TCPA does not limit its scope).

We agree that the terms "citizen" and "participation" contemplate a larger public purpose. Further, the stated purpose of the statute indicates a requirement of some nexus between the communication used to invoke the TCPA and the generally recognized parameters of First Amendment protections. Otherwise, any communication that is part of the decision-making process in an employment dispute—to name just one example—could be used to draw within the TPCA's summary dismissal procedures private suits implicating only private issues. *Cf. Pickens v. Cordia*, 433 S.W.3d 179, 184–85 (Tex. App.—Dallas 2014, no pet.)

(holding that TCPA protection of "exercise of the right of free speech" did not apply to suit over content of appellant's blog, on which he made allegedly disparaging comments about his family members, because those communications were not matter of public concern).

Because Souki and Rayford failed to meet their burden of establishing, by a preponderance of the evidence, that their communications fell within the statutory definition of exercise of the right of association, the trial court did not err in denying their motion to dismiss.

Given our conclusion that Souki and Rayford failed to meet their evidentiary burden, we do not reach Souki and Rayford's second issue regarding whether Lotfi established a prima facie case of tortious interference.

## Conclusion

Because Souki and Rayford failed to meet their evidentiary burden, the trial court did not err in denying their motion to dismiss under the TCPA. We affirm.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.
Justice Jennings, joining the majority opinion and concurring separately.
Justice Sharp, joining the majority opinion and the concurrence.