# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00643-CV

**Karen Neyland, Susan Sinclair, Phyllis Watts, and Connie Causin, Appellants**

**v.**

**Nancy Thompson, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-13-001409, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## CONCURRING OPINION

As members of the judiciary, it is our duty to enforce the plain meaning of the laws the Legislature prescribes. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008) ("When interpreting a statute, we look first and foremost to the plain meaning of the words used. 'If the statute is clear and unambiguous, we must apply its words according to their ordinary meaning' in a way that gives effect to every word, clause, and sentence.") (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). The majority opinion has carried out this duty and, for that reason, I concur in the Court's judgment.[1] Nevertheless, it is difficult to turn a blind eye to a

---

[1] I do not agree with the majority's opinion that statements made by Neyland, Sinclair, and Watts to a reporter relate to "economic" or "community well-being" as those terms are used in the TCPA. Statements about a purely private economic matter are not, in my opinion, within the purview of the TCPA and are distinguishable from the type of "matter of public concern" involved in *Schimmel v. McGregor*, 438 S.W.3d 858, 859 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (involving statements made by attorney for HOA that could have had city-wide impact on property values). Nevertheless, because the majority ultimately concludes that Thompson failed to establish a prima facie case of defamation on the basis of these statements, and I agree with that conclusion, I concur in the judgment.

situation where, as here, the Legislature may not have anticipated all of the consequences that naturally flow from application of the plain meaning of its own statute—the Texas Citizens Participation Act (TCPA)—and the impact the statute will have on litigation in Texas. I write separately, therefore, to call the Legislature's attention to an overly broad statute that will negatively impact litigation in Texas for years to come unless it is amended.

As the majority recognizes, the TCPA is an "anti-SLAPP" statute, meaning that if a defendant is targeted by a "Strategic Lawsuit Against Public Participation," also commonly referred to as a "SLAPP" suit, the defendant can move for dismissal and attorney's fees if the action is "based on, relates to, or is in response to [the defendant's] exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .009(a). The idea behind the TCPA, which undoubtedly fueled the overwhelming support it had in the Legislature, is a noble one—we, as a State, wish to protect those who are targeted with lawsuits of questionable merit in retaliation for their participation in public matters. The problem is that this overarching purpose seems to have been lost in translation by the Legislature because of the exceedingly broad definitions it gave to a number of the essential terms used in the TCPA.

The first example of these broad definitions is the phrase "exercise of the right to petition," which is defined as "communications in or pertaining to . . . a judicial proceeding." *Id*. § 27.001(4). If we are to construe these words liberally, as the Legislature has directed, *id.* § 27.011(b), or even simply apply the plain meaning of the words the Legislature chose, this definition would encompass a potentially limitless range of communications in nearly any legal proceeding, including those that are far removed from any form of public participation guaranteed by the Constitution.

2

This definition could potentially include all demand letters, cover letters, and e-mails relating to litigation in some way. For that matter, the definition could conceivably extend to communications between private parties if it could be argued that those communications referred to a judicial proceeding, regardless of whether the private parties are even involved in the litigation.

The TCPA's definition of the "exercise of the right of association" is similarly expansive. According to the Legislature, it means "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). Taken literally, it is conceivable that this definition could encompass, for example, any internal communications in a business. If an employee e-mails another employee about something related to the business of the company in which they are both employed, have they not made a communication as a result of joining together to collectively pursue a common interest? Likewise, when two parents orally discuss a problem their son or daughter is having with a particular teacher at school, have they not joined together to express, pursue, or defend a common interest and made a communication pursuant to that endeavor?

Obviously, the application of the TCPA to these hypothetical situations can lead to absurd results and ignores the underlying context and purpose of the statute—"to encourage and safeguard the *constitutional* rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002 (emphasis added).[2]

---

[2] At least one of our sister courts has recognized that the TCPA should not be interpreted in a vacuum, but instead it should be interpreted in line with its stated purposes. *See Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (refusing to find

3

In my view, the TCPA should operate in a way that is consistent with this stated purpose; the problem with that view is that nowhere in the definitions contained within the TCPA are these considerations included. The only definition that comes close to matching the statute's stated purpose is the "exercise of the right of free speech," which is defined as a "communication made in connection with a matter of public concern." *Id.* § 27.001(3). That definition is in line with the purpose and context of the statute with regard to the constitutional underpinnings of protected free speech. But the Legislature did not stop there—it further defined a "matter of public concern" to include "economic" or "community well-being" or a "service in the marketplace." Such broad terms have forced courts, like the majority here, to conclude that disputes between an HOA and its property manager involve the right to free speech because it is relevant to "economic" or "community well-being." It is difficult to reconcile such a conclusion with the stated purposes of the TCPA. Moreover, if all that is required is a relation to "economic well-being," without further limitation on that term, then why would it not apply to a family's discussions about its budget, a

TCPA applicable on claim that decision in terminating employee was exercise of right of association). I agree with this reasoning, which is firmly grounded in cases from the supreme court and this Court. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."); *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear."); *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 474 (Tex. App.—Austin 2012, pet. denied); *Garza v. Texas Boll Weevil Eradication Found., Inc.*, Nos. 03-11-00787-CV, 03-11-00788-CV, 03-11-00789-CV, 03-11-00790-CV, 2012 WL 6726685, at *4-5 (Tex. App.—Austin Dec. 19, 2012, no pet.) (mem. op.).

private company's disclosures to its investors, and other private communications that do not implicate constitutional concerns related to public participation?

The hypothetical situations and communications to which the TCPA could apply are endless based on the broad language used by the Legislature. It seems that any skilled litigator could figure out a way to file a motion to dismiss under the TCPA in nearly every case, in the hope that the case will not only be dismissed, but that the movant will also be awarded attorneys' fees.[3] In short, it is difficult to imagine that the Legislature intended for the TCPA to turn civil litigation practice in general on its head; yet that is the natural consequence of the language used in the statute.

As a Court, it is not our role to change the words used by the Legislature, but it is our responsibility to point out to the Legislature when its words do not match the stated purpose of the law it enacted and have unintended consequences on civil litigation throughout the State. Words matter, and because they do, I call upon the Legislature to remedy the breadth of the TCPA by revisiting the definitions used in Section 27.001.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Filed: April 7, 2015

_____

[3] Even if the motion to dismiss is not granted, the TCPA gives the movant a right to appeal that ruling to an intermediate appellate court, further delaying proceedings. *See* Tex. Civ. Prac. & Rem. Code § 27.008.