

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00314-CV

———————————————

AMYN GILANI, Appellant

V.

THOMAS WAYNE RIGNEY AND RIGNEY FINANCIAL SERVICES, LLC,
Appellees

———————————————

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-324371-21

———————————————

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

After appellant Amyn Gilani sent a demand letter to appellees Thomas Wayne Rigney and Rigney Financial Services, LLC (RFS), Rigney and RFS filed suit against Gilani seeking declarations to clarify their conduct in relation to several statutory violations that Gilani had raised in his letter. Gilani moved to dismiss Rigney and RFS's suit under the Texas Citizens Participation Act (the TCPA), arguing that the suit was based on or in response to Gilani's First Amendment free-speech and petition rights. The trial court denied the motion. Because we conclude that Rigney and RFS's suit was not based on or related to Gilani's exercising his First Amendment rights, we affirm the trial court's denial.

## I. BACKGROUND

### A. THE DOMAIN NAMES

Rigney is the principal of and a financial advisor at RFS; his wife, Callie Rigney, is a councilmember on the Colleyville City Council. On February 4, 2021, Gilani filed as a candidate for Rigney's wife's seat on the council. For reasons we need not discuss, Rigney admitted in an affidavit that he "caused Mrs. Rigney's campaign . . . to purchase with a personal credit card" two domain names using Gilani's name—amynforcolleyville.com and gilaniforcolleyville.com—on February 5. RFS was listed as the owner of these domain names. Rigney and RFS did not activate or use either domain name. Gilani soon switched to run for a different seat on the council held by

2

Chuck Kelley, "an open[] ally of Ms. Rigney."  Although not clear from the record, it appears that Callie Rigney and Kelley won election to the City Council.

## B.  THE DEMAND LETTER

On March 16, 2021, Gilani's attorney sent a demand letter to Rigney and RFS regarding the domain names and asserted that Rigney and RFS had begun a "disinformation campaign" directed to voters that "alleged false and harmful information about Mr. Gilani and his Campaign."  Gilani asserted that he had "unequivocal" evidence that Rigney and RFS had violated "various state and federal laws"—the Anti-Cybersquatting Consumer Protection Act (the ACPA), the Deceptive Trade Practices Act (the DTPA) for the spread of misinformation, and the "Anti-Dilution Statute" (the ADS).[1]  Gilani "commanded" that Rigney and RFS immediately turn over ownership and control of the domain names to Gilani and that Rigney and RFS immediately institute a "**LITIGATION DOCUMENT HOLD**."  The hold was to be focused on documents that Gilani asserted were "potentially relevant to impending litigation": "[A]ll correspondence, records, files, receipts, voicemails, texts, and messages related to the Domains, messages from the Domains, acquisition and utilization of the Domains, the Gilani Campaign, the Kelley Campaign, the Rigney

---

[1]*See* 15 U.S.C.A. § 1125(d) (the ACPA); Tex. Bus. & Com. Code Ann. §§ 16.103, 17.46 (the ADS and the DTPA).  Gilani also raised several claims he asserted arose under common law: misappropriation of likeness, violation of the right to publicity, defamation, and business disparagement.

3

Campaign, and any other circumstances related to the matters described in [the demand letter]."

RFS's counsel responded to Gilani's demand letter and requested copies of the evidence supporting Rigney and RFS's alleged statutory and common-law violations. Gilani did not reply. Rigney and RFS preserved all documents "related to the Domains, including registration and purchase records." But they asserted that "[i]ndefinite maintenance of a 'Litigation Hold' regarding Mr. Gilani's allegations will impose a significant cost" mainly because of Rigney's "voluminous texts and email communications with [his] wife regarding her campaign" and because the hold "interferes with [Rigney's] and [RFS's] businesses and ordinary document retention practices and procedures."

## C. THE DECLARATORY-JUDGMENT SUIT

On March 30, Rigney and RFS filed suit against Gilani, seeking nine declarations under the Uniform Declaratory Judgments Act (the UDJA) regarding their conduct:

> 1. Rigney and RFS "are entitled to remove the Litigation Hold" and may "restore their ordinary document retention practices and procedures";
>
> 2. Rigney and RFS are not "obligated to transfer" the domain names to Gilani;
>
> 3. Rigney and RFS have not engaged in deceptive and false use of Gilani's likeness by the domain names;
>
> 4. Rigney and RFS have not violated the ACPA because Gilani's name is not a protectable mark, the mark is not distinctive or famous, or Rigney and RFS did not have a bad-faith intent to profit from the mark;

4

5. In the alternative to the fourth requested declaration, Rigney and RFS did not violate the ACPA because they believed or had reasonable grounds to believe that the alleged use of the domain names was a fair use or otherwise lawful;

6. Rigney and RFS did not violate the DTPA because Gilani cannot establish that he is a consumer under the DTPA, that the alleged act or practice was committed in connection with a purchase or lease of a good or service, that Rigney or RFS committed a wrongful act, or that their actions were a producing cause of Gilani's damages;

7. Rigney and RFS did not violate the ADS because Gilani's name is not a protectable mark or because Gilani cannot establish that the mark is distinctive or famous or that the use of the mark is likely to cause dilution;

8. In the alternative to the seventh requested declaration, Rigney and RFS did not violate the ADS because any use of Gilani's name was a fair use, was a noncommercial use, or constituted news reporting or commentary; and

9. Rigney and RFS are entitled to recover their attorneys' fees.

## D. The Motion to Dismiss

On June 4, Gilani filed a partial motion to dismiss most of the declaratory-judgment action under the TCPA, arguing that the suit was based on or in response to his First Amendment rights to free speech and to petition.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). Gilani also asserted that the trial court did not have subject-matter jurisdiction over Rigney and RFS's UDJA suit because the suit sought an advisory opinion on uncertain, contingent future claims. Gilani's motion was

---

[2]In addition to his TCPA arguments, Gilani sought dismissal based on his assertion that the trial court lacked subject-matter jurisdiction over the suit.

5

partial because he did not seek dismissal of Rigney and RFS's ninth requested declaration regarding attorneys' fees.

Rigney and RFS responded that the TCPA did not apply because their requested declarations were not directed to Gilani's conduct, but rather to their own conduct, and because Gilani's presuit demand letter was not an exercise of his free-speech or petition rights. In short, they argued that there was no connection between their suit and Gilani's exercising his First Amendment rights. Even if the TCPA applied, Rigley and RFS asserted that they had established a prima facie case for their UDJA suit.

In reply, Gilani asserted that eight of the requested declarations were "directly connected to a statement in Gilani's letter" and included an illustration of the argument:

| Statements in Gilani's Demand Letter | Declaratory Relief Sought in Plaintiff's Original Petition |
|---|---|
| CEASE AND DESIST (Thomas Wayne Rigney; Rigney Financial Services Inc.)<br>March 16, 2021<br>Page 2 of 3<br><br>Services LLC, for Place 6; subsequently, Mr. Gilani switched to run for Place 5 against an openly ally of Ms. Rigney, Mr. Chuck Kelley.<br><br>Regardless of the reasons, however, the conduct here is violative of various state and federal laws, including but not limited to:<br><br>(1) Anti-Cybersquatting Consumer Protection Act as codified under Federal law at 15 U.S. Code § 1125 ("False designations of origin, false descriptions, and dilution forbidden") which can make the violating party subject to statutory damages of up to $100,000 for each domain;<br><br>(2) misappropriation of likeness and a violation of the right of publicity under Texas common law;<br><br>(3) violations of the Deceptive Trade Practices Act for the spread of misinformation as codified in Chapter 17 of the Texas Business and Commerce Code, which authorizes treble damages;<br><br>(4) defamation by libel and business disparagement under Texas common law; and<br><br>(5) Anti-Dilution Statute as codified under Texas law in Chapter 16 of the Texas Business and Commerce Code, which authorizes injunctive relief;<br><br>And aside from unlawful in the ways described above, this type of underhanded, disgusting conduct to impact a local election—and against a U.S. military veteran—is simply un-American.<br><br>**Thomas Wayne Rigney and Rigney Financial Services LLC, you are each hereby commanded to cease and desist all unlawful conduct against Mr. Gilani and his Campaign, including but not limited to ceasing:**<br><br>(a) the improper ownership, maintenance, and utilization of the website domains "amynforcolleyville.com" and "gilaniforcolleyville.com" (collectively, the "Domains"), which constitutes "cybersquatting";<br><br>(b) libel and business disparagement of Mr. Gilani via online messaging and correspondence to voters in the City of Colleyville, which have been clearly intended to misinform, mislead, and ultimately negatively impact Mr. Gilani's candidacy;<br><br>(c) deceptive and false use of the likeness of Mr. Gilani via the Domains to disseminate false information; and<br><br>(d) illicit in-kind and other financial support of Candidates Chuck Kelley (current opponent for Place 5) and Callie Rigney (Candidate's former opponent for Place 6) | a) Plaintiffs are entitled to remove the Litigation Hold demanded by Mr. Gilani and restore their ordinary document retention practices and procedures;<br><br>b) Plaintiffs are not obligated to transfer the Domains to Mr. Gilani;<br><br>c) Plaintiffs have not engaged in deceptive and false use of Mr. Gilani's likeness via the Domains to disseminate false information;<br><br>d) Plaintiffs have not violated the Anti-Cybersquatting Consumer Protection Act codified at 15 U.S.C § 1125 (the "ACPA"). Specifically, Mr. Gilani's name does not constitute a protectable mark. Even if Mr. Gilani's name constituted a protectable mark, he could not establish that the mark is distinctive or famous or that Plaintiffs had a bad faith intent to profit from that mark, as required by the statute;<br><br>e) In the alternative, Plaintiffs did not have a bad faith intent to violate the ACPA because they believed and had reasonable ground to believe that the alleged use of the Domains was a fair use or otherwise lawful;<br><br>f) Plaintiffs have not violated the Texas Deceptive Trade Practices Act codified in Chapter 17 of the Texas Business and Commerce Code, as alleged by Mr. Gilani. Additionally, Mr. Gilani cannot assert a claim against Mr. Rigney or Rigney Financial for violation of the DTPA because he cannot establish his status as a consumer, as defined by the statute. Additionally, Mr. Gilani cannot assert a claim against Mr. Rigney or Rigney Financial for violation of the DTPA because the alleged deceptive act or practice was not committed in connection with any transaction by Mr. Gilani in purchasing or leasing goods or services. Additionally, Mr. Gilani cannot establish that Plaintiffs committed any wrongful act under the DTPA or that any action by Plaintiffs was a producing cause of Mr. Gilani's damages;<br><br>g) Plaintiffs have not violated the Anti-Dilution Statute codified in Chapter 16 of the Texas Business and Commerce Code. Specifically, Mr. Gilani's name does not constitute a protectable mark. Even if Mr. Gilani's name constituted a protectable mark, he could not establish that the mark is distinctive or famous or that Plaintiffs use of the mark is likely to cause the dilution of the mark; and<br><br>h) In the alternative, Mr. Gilani may not bring an action under Tex. Bus. & Com. Code § 16.103 for violation of the Anti-Dilution Statute because any use of Plaintiffs' use of Mr. Gilani's name constituted a fair use, a noncommercial use of the name, or use for news reporting or commentary. |

To further show the close connection between the exercise of his First Amendment rights and Rigney and RFS's suit, Gilani relied on the fact that the declaratory-judgment suit was filed only fourteen days after he sent his demand letter.

At the July 21 hearing on the dismissal motion, the trial court urged the parties to attempt to settle, and the parties agreed to continue the hearing until September 15 to allow them to conduct "informal" discovery. *See id.* §§ 27.004(c), 27.006(b). When the parties notified the court that they could not come to an agreement, the trial court issued a letter to the parties on September 15 stating its decision to deny the motion and directing Rigney and RFS's counsel to prepare a proposed order, which the trial

court signed on September 29.[3]   Gilani filed a notice of accelerated appeal.  *See id.*

§§ 27.008(b), 51.014(a)(12).

## II.  THE TCPA

### A.  REVIEW STANDARDS

A defendant-movant seeking the protection of the TCPA must initially

demonstrate that the claim is based on or is in response to the defendant's exercise of

the right of free speech, to petition, or of association.[4]  *See id.* §§ 27.003(a), 27.005(b).

If the TCPA movant does so, the burden shifts to the plaintiffs-nonmovants to

produce clear and specific evidence of a prima facie case for each element of each

asserted claim.  *See id.* § 27.005(c).  If the nonmovants meet their burden, the movant

may still be entitled to dismissal if he establishes an affirmative defense or other

ground on which he is entitled to judgment as a matter of law.  *See id.* § 27.005(d).

We review the trial court's interpretation of this statutory framework de novo

and must consider the pleadings, any evidence that a court could consider on

summary judgment, and any submitted affidavits stating the facts on which liability or

a defense is based.  *See id.* § 27.006(a); *S & S Emergency Training Sols., Inc. v. Elliott*,

---

[3]A visiting judge signed the denial order.

[4]The Legislature recently narrowed the applicability of the TCPA, which informs our decision today.  *See, e.g.*, *ML Dev, LP v. Ross Dress for Less, Inc.*, No. 01-20-00773-CV, 2021 WL 2096656, at *2–3 (Tex. App.—Houston [1st Dist.] May 25, 2021, no pet.); Amy Bresnen et al., *Targeting the Texas Citizen Participation Act: The 2019 Texas Legislature's Amendments to a Most Consequential Law*, 52 St. Mary's L.J. 53, 122–23 (2020).

564 S.W.3d 843, 847 (Tex. 2018); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

However, Rigney and RFS's pleadings are "the best and all-sufficient" evidence of the nature of their claims against Gilani. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. [Comm'n Op.] 1936)).

## B. FIRST INQUIRY: BASED ON OR IN RESPONSE TO FIRST-AMENDMENT RIGHTS

### 1. Right to Petition

Regarding the right to petition, Gilani argued that the demand letter fell under the TCPA's catch-all definition of the right: "[A]ny other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(E). The established understanding of the constitutional right to petition includes presuit demand letters. *See Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 220–21 (Tex. App.—Austin 2017, no pet.); *see also Moricz v. Long*, No. 06-17-00011-CV, 2017 WL 3081512, at *4 (Tex. App.—Texarkana July 20, 2017, no pet.) (mem. op.).

Even so, Gilani bore the burden to demonstrate that Rigney and RFS's UDJA suit was based on or in response to his right to petition. Gilani argues that he demonstrated a sufficient connection or nexus between the demand letter and the requested declarations in Rigney and RFS's suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216–17 (Tex. App.—

9

Houston [1st Dist.] 2014, no pet.) (op. on reh'g). The demonstration of a connection between Gilani's demand letter and Rigney and RFS's UDJA suit is an integral part of our consideration of the applicability of the TCPA. *See* Mark C. Walker, *The Essential Guide to the Texas Anti-SLAPP Law, the Texas Defamation Mitigation Act, and Rule 91A*, 91 The Advoc. (Tex.) 280, 298 (2020). Indeed, a failure to closely examine this requirement could lead to an "absurdly broad application" of the TCPA. *Id.* at 297–98.

The UDJA permits a person whose rights, status, or other legal relations are affected by a statute to obtain a declaration of those rights, status, or other legal relations thereunder in order "to settle and to afford relief from uncertainty and insecurity." Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(b), 37.004(a). The UDJA "is to be liberally construed and administered." *Id.* § 37.002(b). Here, Rigney and RFS sought declarations from the trial court regarding their own conduct surrounding the purchase of the domain names, not Gilani's. In other words, they solely requested a determination of their duties and obligations under the ACPA, the DTPA, and the ADS. *See* Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech L. Rev. 163, 193–94 (2020) (opining that the applicability of the TCPA to a UDJA suit, filed after presuit correspondence, should be determined by focusing on whether UDJA plaintiff seeks only a declaration of rights raised by the correspondence or whether coercive, affirmative relief from injuries is sought). Rigney and RFS's requested relief did not seek to prohibit Gilani

10

from constitutionally protected petitioning activity. *See Wells v. Crowell*, No. 05-20-01042-CV, 2021 WL 5998002, at *4–5 (Tex. App.—Dallas Dec. 20, 2021, no pet.) (mem. op.); *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 200–02 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The TCPA does not create a right for a TCPA movant to usurp the UDJA protections, which are given to anyone whose own rights are affected by a statute. *See Dolcefino*, 540 S.W.3d at 201–02. To conclude otherwise would ignore the TCPA's recognition that it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions," such as the UDJA. Tex. Civ. Prac. & Rem. Code Ann. § 27.011(a); *see Dolcefino*, 540 S.W.3d at 200–01. It would also ignore one of the TCPA's purposes: to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

Thus, although Rigney and RFS's UDJA suit partially tracked the demand letter's asserted statutory violations, as shown in Gilani's illustration, the claims were not based on or in response to Gilani's exercise of the right to petition. *See Szymonek v. Guzman*, No. 03-20-00569-CV, 2022 WL 406363, at *10 (Tex. App.—Austin Feb. 10, 2022, no pet. h.); *Wells*, 2021 WL 5998002, at *4–5; *Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at *3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.); *Youngblood v. Zaccaria*, 608 S.W.3d 134, 138–41 (Tex. App.—San Antonio 2020, pet. denied); *Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *3–4 (Tex. App.—Dallas Sept. 5, 2019, pet.

11

denied) (mem. op.); *cf. Jackson v. Kell Auto Sales, Inc.*, No. 02-21-00106-CV, 2021 WL 5367846, at *2 (Tex. App.—Fort Worth Nov. 18, 2021, no pet.) (mem. op.) (concluding auto seller's breach-of-contract counterclaim was not based on or in response to auto buyer's right to petition for redress for alleged DTPA and fraud violations against seller). In other words, Rigney and RFS's UDJA claims seek a determination of the legal principles that the parties should apply in resolving their various legal disputes; they are not based on or in response to Gilani's petition rights. *See Choudhri*, 2020 WL 4689204, at *3; *Riggs & Ray*, 2019 WL 4200009, at *4. Gilani's reliance on the timing of Rigney and RFS's UDJA suit does not change this conclusion. *See Jackson*, 2021 WL 5367846, at *2.

## 2. Right to Free Speech

Gilani also contends that the demand letter was an exercise of his free-speech rights and that Rigney and RFS's UDJA suit was based on or in response to the letter. However, for the same reasons we previously discussed regarding Gilani's petition rights, Rigney and RFS's UDJA suit was not based on or in response to Gilani's exercising his free-speech rights. Their suit was based on or in response to their own conduct surrounding the domain names, not Gilani's conduct in sending the demand letter. Thus, the TCPA does not apply to the UDJA suit, and we need not address the other steps in the TCPA analysis. *See Riggs & Ray*, 2019 WL 4200009, at *5–6; *Dolcefino*, 540 S.W.3d at 201–02.

12

### III. TRIAL COURT'S JURISDICTION

Gilani asserts, as he did in the trial court, that Rigney and RFS's UDJA suit must be dismissed because of "fatal flaws of subject matter jurisdiction and standing." These issues go beyond the limited nature of the permitted interlocutory appeal here. We have interlocutory appellate jurisdiction solely over a review of the trial court's denial of Gilani's motion to dismiss filed under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). Gilani's dismissal arguments that are not based on the TCPA fall outside this narrow grant of appellate jurisdiction and we may not address them in this appeal. *See, e.g.*, *Sasano v. Niemela-Waller*, No. 02-20-00378-CV, 2021 WL 3679242, at *2 (Tex. App.—Fort Worth Aug. 19, 2021, no pet.) (mem. op.); *Fawcett v. Rogers*, 492 S.W.3d 18, 29 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (op. on reh'g). *See generally CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011) ("We strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable."); *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex. 1985) ("Unless there is a statute specifically authorizing an interlocutory appeal, the Texas appellate courts have jurisdiction only over final judgments.").

## IV. CONCLUSION

Because Rigney and RFS's UDJA claims were not based on or in response to Gilani's exercise of his free-speech or petition rights, the TCPA did not apply.[5] Thus, the trial court did not err by denying Gilani's motion to dismiss under the TCPA. We cannot address Gilani's alternative dismissal arguments that do not implicate the TCPA. We overrule Gilani's appellate issues and affirm the trial court's order denying Gilani's partial motion to dismiss under the TCPA. *See* Tex. R. App. P. 43.2(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  March 10, 2022

---

[5]We recognize that the TCPA includes UDJA suits in its definition of a legal action.  Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6).  We are not holding that Rigney and RFS's UDJA suit is not a legal action subject to the TCPA; we are holding that their UDJA suit is not based on or in response to Gilani's demand letter even if the letter were an exercise of his First Amendment rights.  *See generally id.* § 27.003(a) (conferring right to file TCPA motion to dismiss if "a legal action is based on or is in response to a party's exercise of the right of free speech [or] right to petition").

14