**Opinion issued August 20, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00846-CV

————————————

**DAVID GORDON SCHMIDT D/B/A ABC BONDING COMPANY AND GREENBRIAR EQUITIES, LLC, Appellants**

**V.**

**BRENDA CRAWFORD, CARLOS PEREZ, ANTHONY WILLIAMS, ANNIE J. BUTLER, ANTHONY FRANCO, AMBRIA FIKE, DEBRA JOHNSON, VICTORIA WELLS, MILDRED ENGLISH, OTTIS WILLIAMS, RANDY L. LASTER, PABLE MURILLO, EMMA MURILLO, CRAIG COOPER, NELSON MARTIN ARMSTRONG, MAZEN BREIR, BENITO MARTINEZ, TANYA PEDROZA, SERGIO PEDROZA, CAROLYN ETHERIDGE, LOUISE SEALS, TERRY MOORE, MARIA RAMIREZ, PETE GARCIA, DENISE BALDWIN, WILLIAM T. ETHERTON, PATRICIA ETHERTON, SHARON WILLIAMS, HELEODORA CRUZ, HATTIE HEMPHILL, AGUSTINA ROBERTS, LOUIS ROBERTS, EMILY JOHNSON, IRIS EDITH SEGUNDO, JOANNA LOAEZA, KEVIN WILLIAMS, RITA WILLIAMS, YOLANDA CARRIERE, ANTHONY CITTI, JUAN CISNEROS, BRANDY JOHNSON, JOHN GHOLSTON, ANSON FURMAN, IVIE BELL, LAURA DIAZ, DARLENE ALEJANDRO, JESSE DELEON, CYNTHIA DELEON, JESUS VEGA, BEVERLY VEGA, RAY PERFECTO, BRIDGET NWOKO, NEMIAH CLARK, EARLEAN WILLIAMS, LAKESHEA CLARK, PETE**

GONZALES, PAT LEE, MARY VICTORIAN, TIFFANY JOHNSON, ELIAS GAMINO, TIFFANY CHENIER, MURALINE PETER, VICTOR REYES, VERONICA SMITH, JIMMIE ENGLETT, VELVET HILTON, STEPHEN LACY, LEROY VANTERPOOL, PATRICIA WESLEY, SAMMIE L. ABRAHAM, EDITH M. ABRAHAM, BRENDA BROWN, JESUS SILVESTRE, FELICITA AGUILAR, GABINO SALAZAR, JOSEFINA M. NOWLIN, SANDRA DORRON, JESUS VELAZQUEZ, BONNIE CEPHUS, JOSEPHINE ROCHA, LEON JACOBSON, LINDA JACOBSON, OLIVIA SIMS, CONSTANCE GAY, ENSLEY CLINTON, LLEWEL WALTERS, MAURO REYNERIO FERNANDEZ CRUZ, ANTHONY THOMPSON, JUAN CARLOS RIOS RAMIREZ, PHILLIP C. CLARK, BEATRICE PENA, CAROL ASKEW, BRIAN CORMIER, STEVEN CRUZ, LEROY WELLS, HAROLD KINNARD, PLUSHATTE DAVIS, DEIDRE DOBBINS, DAVID SPAULDING, MICHAEL KOSSA, DIANA KOSAS, SERAFIN LUNA, DEBORAH BERRYHILL, O'KEEFE ALLEN, CHRISTOPHER P. VANA, SR., GRACE HAMILTON, BELINDA SPENCER, RENORA RIGGINS, IVONNE JACKSON, EDITH ORDONEZ, WILBER ORDONEZ, TESSIE LYNCH, KATHERINE SANDERS, CHARLES MOURNING, ILIANA PEREZ, TIBURCIA ZAYALA, CHRISTOPHER GREEN, DONALD SHELTON, DONALD CREDEUR, AVIS BATTLE, GRACE PHILLIPS, DAROLYN LEWIS, RAYMOND LEWIS, JR., MICHAEL MILLER, ESTHER DOUBLIN, MARCOS ORTIZ, ROBERT SANCHEZ, ROSALINDA SANCHEZ, TIFFANY SHANNON, ALTHA DAVIS, HERMAN DAVIS, NELSON HEBERT, MELVIN HERRERA, JUANITA CANO, PATRICE BOYCE, EDSON DRONBERGER, CHARLOTTE WYNN, JACQUELINE HILL, ATANACIO RUIZ, ELOISA RUIZ, ROBERTO HERNANDEZ, CLEMENTINA HERNANDEZ, JIM SILVA, LUZ BATALLA, ISMAEL MEDINA, HORTENCIA RODRIGUEZ, ALFRED WATSON, JERRY ESCALANTE, LLOYD CASTILOW, LUIS PENA, CAREY MURRAY, LUZ WILDMAN, CARL EARL, ISMAEL AVELLANEDA, KENDALIA DAVIS, GAIL FRITZ, LEE CARTWRIGHT, ORFILIA MIRANDA, JAINELL LETRYCE VELAZQUEZ BUTLER, COURTNEY MITCHELL, TRAVIS WATERS, DEBBIE WATERS, ANTHONY NORRIS, SHARON A. NORRIS, ADELMIRA SALINAS, SARAH LANDRY, GLORIA GARCIA, JOEL ZAMARRIPA, GERARDO ROMO, PHILLIP ROSS, LAKEISHA ROSS, EARLINE DURANT WATKINS, GERARDO MARQUEZ, NILZA RODRIGUEZ, JANNETTE BROWN, VICTOR H. ESTRADA, BLANCA A. ESTRADA, ANNE CLARE, JAMES CLARE, CHARLENE TALBOTT, MARIA VELEZ, GREG HILLIGIEST, RANDY WILSON, SAUL

AGUILERA, HARLENE BRADY, MARY FLOWERS, JIMMIE SMITH, BETTY R. SMITH, CYNTHIA JENKINS, CLARENCE MCDADE, CHARLES O. MCDONALD, LARS WESTERBERG, ETHEL O'QUINN, JEFFREY GLOVER, KATRINA GLOVER, LAURA LIGGETT, BRENDA TRUSSEL, DALE TRUSSELL, CECELIA ROSE, VANESSA BOURDA, FRANCISCO CAMPOS, CONNIE CAMPOS, SAMMY J. COLLINS, FELICIA BOWMAN, KENDALL WILKINS, TYRONSA WILKINS, ANDREW TAYLOR, MARQUE JOHNSON, BEVERLY HENSLEY, YVONNEYA BROWN, COURTNEY HERNANDEZ, ALBERT ROWAN, TONI OWENS, JIMMY KIRKENDOLL, JOAN L. KIRKENDOLL, MARY ANN EDJEREN, THELMA HOUSLEY, KENNETH JOHNSON, JUDITH ANN WALKER, LESLIE BROWN, DEBORAH EATON, STUART WILLETT, JOSE TORRES, DIANA SALINAS, ERSKINE VANDERBILT, CAROLINE TUNSEL, CATHY JONES, GAIL UDOSEN, REGINA FULTON, HECTOR REYES, LUCIO TORRES, JR., ERNESTO LARA, JACKIE THORNTON, ALFREDO DIMAS, NANCY TAYLOR, REGINALD COLE, CATHLYN COLE, GERALD SMITH FOR THE ESTATE OF EARNEST D. SMITH, FAUCINDA VENCES, THUYVI VINH, MAIDA KHATCHIKIAN, CARL EARL, TROY KING, DIANA ROMERO, SANDRA PYLE, GARY DIAL, MARIA MENDEZ, ANTHONY HARRIS, KEENA HARRIS, KATHERINE STEWART, MARY CURRIE, SIVERAND STERLING, JR., LARRY TANKERSLEY, LESLIE JONES, GONZALO PENA, JOHN LONG, BEVERLY LONG, TERRY RANDLE, AND FELICIA FRANK, Appellees

On Appeal from the 55th District Court
Harris County, Texas
Trial Court Case No. 2018-31381

3

**DISSENTING OPINION**

Appellants, David Gordon Schmidt, doing business as ABC Bonding Company ("ABC"), and Greenbrier Equities, LLC ("Greenbrier") (collectively, "appellants"), sold bail bonds and bail bonding services to appellees[1] in this case.

ABC, by its own count, has provided bail bonds and bail bonding services to thousands of people for many years using a process that follows a "relatively common pattern." ABC "collateralizes the bond obligations [that] it posts on behalf of criminal defendants by obtaining indemnity obligations secured by deeds of trust" and it "files these deeds of trust in the Harris County real property records to perfect the indemnity obligation[s]." ABC has sold to Greenbrier the right to collect on the debts of ABC's customers. When 250 of ABC's customers filed suit against appellants to quiet title and for fraudulent liens, fraud, negligent misrepresentation, unfair debt collection practices, "constitutional violations," and a declaratory judgment, appellants moved to dismiss appellees' claims under the Texas Citizens' Participation Act ("TCPA").[2] The trial court properly denied appellants' motion.

---

[1] Due to the large number of appellees in the instant case, I do not address them individually by name.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.

In their sole issue in this interlocutory appeal,[3] appellants contend that the trial court erred in denying their motion to dismiss[4] appellees' claims. Because appellees' claims fall within a statutory exemption for commercial speech,[5] and thus are exempted from the application of the TCPA's dismissal scheme, I would hold that the TCPA does not apply to any of appellees' claims and the trial court did not err in denying appellants' motion to dismiss.[6] Because the lead opinion holds otherwise, I respectfully dissent.

## Background

The acronym SLAPP stands for "Strategic Lawsuits Against Public Participation" and refers to lawsuits that are brought for the purpose of silencing citizens who are exercising their First Amendment freedoms. *See Jardin v.*

---

[3]  *See id.* §§ 27.008, 51.014(a)(12).

[4]  *See id.* § 27.003.

[5]  *See id.* § 27.010(b).

[6]  *See Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.) (commercial speech exemption constitutes independent ground "that can fully support a trial court's denial of a motion to dismiss filed pursuant to the TCPA"); *see also Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (appellate courts may consider issues "that are presented to the trial court and preserved for review on appeal"); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 884–85 (Tex. App.—Austin 2018, pet. filed) (plaintiffs argued to appellate court "that the trial court could have properly denied the . . . [TCPA] motion to dismiss . . . for three additional, independent reasons," and although "the trial court did not expressly rule on these alternative grounds when it denied the motion," appellate court could still determine "whether [such] grounds support[ed] the trial court's decision to deny the . . . motion to dismiss"); *Cavin v. Abbott*, 545 S.W.3d 47, 71 (Tex. App.—Austin 2017, pet. denied).

*Marklund*, 431 S.W.3d 765, 769–70 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (internal quotations omitted); *see* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."); *see also* TEX. CONST. art. I, § 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press."), § 27 ("The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."). The TCPA, an anti-SLAPP statute[7] passed by the Texas Legislature in 2011, purports to protect the rights of citizens by providing for the quick and inexpensive dismissal of meritless suits and the shifting of legal costs to parties that file the meritless suits. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.002 ("The purpose of [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government . . . ."), 27.003(a) (allowing party to file motion to dismiss where "legal action is based on, relates to, or is in response to a party's exercise of the right of

---

[7]     *See In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding) (referring to TCPA as "anti-SLAPP legislation" (internal quotations omitted)), *mand. denied*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding).

free speech, right to petition, or right of association"); *Jardin*, 431 S.W.3d at 769–70 ("The TCPA establishes a mechanism for early dismissal of frivolous lawsuits that threaten the free exercise of [citizens' constitutional] rights."); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 212 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The purpose of the TCPA is to prevent powerful interests from filing retaliatory lawsuits against people for speaking freely, associating freely or for exercising their right to petition. *See In re Lipsky*, 460 S.W.3d 579, 584, 586 (Tex. 2015) (orig. proceeding); *Univ. Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 357 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Backes v. Misko*, 486 S.W.3d 7, 16–17 (Tex. App.—Dallas 2015, pet. denied).

In their petition, appellees allege that they are the owners of certain homestead properties. In order to "obtain a bond to post bail for a loved one," appellees approached ABC. Appellees were each charged a "bond fee" and "were asked to sign a document in order for [a] bond to be posted" by ABC. (Internal quotations omitted.) Specifically, ABC required each appellee to sign a blank deed of trust as collateral in the event that the bond is forfeited and ABC becomes responsible for paying the face amount of the bond. Appellants "intentionally left key portions of the document[s] blank when [they were] signed" so that appellants could "change[] the amount listed on the deeds of trust to double the amount of each bail bond."

Appellees further allege that "[t]hey were not asked if they wished to use their home[s] as collateral" for obtaining the bonds; but, instead, were merely told that ABC "would post . . . bond[s] for their loved one[s]" and appellees "would start receiving . . . bill[s] for the bond fee[s]." (Emphasis omitted.) According to appellees, appellants defrauded them "into signing illegal and invalid deeds of trust to attempt to secure a bail bond loan." Appellants then filed the deeds of trust in the Harris County real property records to secure the bail bonds that ABC had posted. Appellees allege that each deed of trust serves as a lien and cloud on each of their homesteads, in conflict with the Texas Constitution. Further, appellants colluded "to carry out unlawful foreclosures on [invalid] liens" on appellees' properties. Because appellants filed numerous illegal and invalid liens to secure bail bond loans, appellees bring claims against appellants to quiet title and for fraudulent liens, fraud, negligent misrepresentation, unfair debt collection practices, "constitutional violations," and a declaratory judgment.

Appellants moved to dismiss *all* of appellees' claims collectively,[8] asserting that all of appellees' claims are based upon appellants' "filing [of] deeds of trust to obtain allegedly fraudulent liens" and the "filing and recording [of] documents with

---

[8] As the lead opinion correctly notes, "[i]n the trial court, [appellants] moved to dismiss [appellees'] *entire* suit, and [appellants] appeal from the trial court's denial of their motion. The same allegations underlie all of [appellees'] claims." (Emphasis added.)

the clerk's office" implicates appellants' exercise of the right to free speech and the right to petition. (Internal quotations omitted.) *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003, 27.005(b). And, as such, appellees were required to, and did not, come forward with clear and specific evidence to establish a prima facie case on each essential element of their claims. *See id.* § 27.005(c).

In response to appellants' motion, appellees asserted that appellants' right to free speech and right to petition were not implicated by their claims to quiet title and for fraudulent liens, fraud, negligent misrepresentation, unfair debt collection practices, "constitutional violations," and a declaratory judgment. And even if the TCPA does apply to appellees' claims, they are exempt due to the statute's commercial speech exemption. *See id.* §§ 27.003(a), 27.005(b), 27.010(b).

In their reply, appellants asserted, inter alia, that the commercial speech exemption did not apply to appellees' claims and appellees failed to prove the commercial speech exemption by a preponderance of the evidence.

After a hearing, the trial court denied appellants' motion, concluding that appellants had failed to show by a preponderance of the evidence that appellees' claims are based on, relate to, or in response to appellants' exercise of the right of free speech, the right to petition, or the right of association. Thus, the trial court concluded that the TCPA does not apply to appellees' claims and reasoned that it need not reach the "'second step' analysis where the burden shifts to [appellees] to

make a prima facie case on the elements of their claim[s]."[9] (Emphasis omitted.) Although the trial court did not reach the commercial speech exemption in its analysis, the issue was clearly before the trial court below.[10] *See id.* § 27.010(b); *Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.) (commercial speech exemption constitutes independent ground "that can fully support a trial court's denial of a motion to dismiss filed pursuant to the TCPA"); *see also Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (appellate courts may consider issues "that are presented to the trial court and preserved for review on appeal"); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 884–85 (Tex. App.— Austin 2018, pet. filed) (plaintiffs argued to appellate court "that the trial court could have properly denied the . . . [TCPA] motion to dismiss . . . for three additional, independent reasons," and although "the trial court did not expressly rule on these alternative grounds when it denied the motion," appellate court could still determine "whether [such] grounds support[ed] the trial court's decision to deny the . . . motion

---

[9]   *See Epperson v. Mueller*, No. 01-15-00231-CV, 2016 WL 4253978, at *8–9 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.) (defendant must first show applicability of TCPA, i.e., that plaintiff's claim is "based on, relates to or is in response to the [defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association," and if initial showing is made, burden shifts to plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of his claim" (internal quotations omitted)).

[10]  In fact, appellants and appellees have both fully briefed in our Court the issue of whether the commercial speech exemption applies to the instant case.

to dismiss"); *Cavin v. Abbott*, 545 S.W.3d 47, 71 (Tex. App.—Austin 2017, pet. denied).

## Commercial Speech Exemption

In the trial court below, appellees challenged the applicability of the TCPA to their claims, asserting that their claims fall under the TCPA's statutory exemption for commercial speech. On appeal, appellees assert that the commercial speech exemption is an independent ground that supports the affirmation of the trial court's denial of appellants' motion to dismiss.

The TCPA does not apply to certain types of "commercial speech." In fact, under the commercial speech exemption, the TCPA does not apply:

> to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (if TCPA exemption applies, movant cannot invoke TCPA protections); *Morrison v. Profanchik*, No. 03-17-00593-CV, --- S.W.3d ---, 2019 WL 2202210, at *2 (Tex. App.—Austin May 22, 2019, no pet. h.) ("If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action."). As the Texas Supreme Court has explained, the "exemption applies only to certain communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by

an individual, but as commercial speech which does no more than propose a commercial transaction." *Castleman v. Internet Money Ltd*., 546 S.W.3d 684, 690 (Tex. 2018) (emphasis internal quotations omitted); *see also N. Cypress Med. Ctr. Operating Co. GP v. Norvil*, No. 01-18-00582-CV, --- S.W.3d ---, 2019 WL 2292630, at *3 (Tex. App.—Houston [1st Dist.] May 30, 2019, pet. filed); *Whisenhunt v. Lippincott*, 474 S.W.3d 30, 42 (Tex. App.—Texarkana 2015, no pet.) (for commercial speech exemption to apply, "statement must be made for the purpose of securing sales in the goods or services of the person making the statement" (internal quotations omitted)); *Backes*, 486 S.W.3d at 21.

In determining whether the commercial speech exemption applies, we examine whether:

(1)    appellants were primarily engaged in the business of selling or leasing goods,

(2)    appellants made the statement or engaged in the conduct on which the claim is based in the their capacity as sellers or lessors of those goods or services,

(3)    the statement or conduct at issue arose out of a commercial transaction involving the kinds of goods or services that appellants provide, and

(4)    the intended audience of the statement or conduct were actual or potential customers of appellants for the kinds of goods or services that appellants provide.

*Castleman*, 546 S.W.3d at 688. Here, the burden of proving the applicability of the exemption is on appellees, as the party asserting it. *See Schimmel v. McGregor*, 438

S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at \*10 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (proponent must establish applicability of commercial speech exemption by preponderance of evidence).

Appellees argue that the commercial speech exemption applies to their claims because appellants are "primarily engaged in the business of selling . . . bond services" or bail bonds and appellants engaged in the conduct on which appellees' claims are based in their capacity as sellers of such goods and services. *See Castleman*, 546 S.W.3d at 688. In their petition,[11] appellees allege that they own certain homestead properties, they each went to ABC to "obtain a bond to post bail," and, as part of their transaction with ABC, they each pledged property, by signing a blank deed of trust, to obtain the desired bond. According to appellees, appellants defrauded them "into signing illegal and invalid deeds of trust to attempt to secure . . . bail bond loan[s]," and appellants then filed the deeds of trust in the Harris County real property records to secure the bail bond that each appellee had sought and that ABC had posted. Appellees allege that each deed of trust serves as a lien

---

[11]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (pleadings and evidence to be reviewed in determining if commercial speech exemption applies).

and cloud on each of their homesteads, in conflict with the Texas Constitution. And as a result of their commercial transaction with appellants, appellees brought suit against appellants for filing numerous illegal and invalid liens to secure bail bond loans and asserted claims to quiet title and for fraudulent liens, fraud, negligent misrepresentation, unfair debt collection practices, "constitutional violations," and a declaratory judgment.

Notably, appellants describe ABC's bail bonding services in detail in their own motion to dismiss and its accompanying affidavit, including explaining that the lien-filing process is a part of their business practices—a process which is at the heart of appellees' claims. In their motion, appellants explain that "ABC is a bail bonding company [that] has provided services to countless residents in Harris County." ABC files deeds of trust provided in connection with its customers' bond applications in the Harris County real property records.

Schmidt, a bail bondsman and the sole proprietor of ABC, further testified by affidavit attached to appellants' motion to dismiss:

> ABC is in the bail bonding business. A criminal bail bond is undertaken by a licensed professional bail bondsman . . . . [When] [a] criminal bail bond is normally undertaken, the bondsman, such as [Schmidt], becomes liable to the relevant court for the full amount of the bond . . . should [the criminal defendant] fail to appear before the court.
>
> . . . In deciding whether to issue a . . . bail bond, ABC assess[es] the . . . risk[] that [a criminal] defendant will fail to appear [for court] against the risk that [ABC] may have to pay the full amount of the bond. . . . [Thus,] [b]onds of . . . certain size[s] require . . . ABC [to] be

14

assured that the person or persons requesting the bond[s] have [a] sufficient ability to pay either the full bond fee[s] or the ability to pay the fee[s] over time.

Further, according to Schmidt, in certain instances, ABC requires a person requesting a bond to have "sufficient assets or be sufficiently creditworthy to fulfill [his] indemnity obligation[] should the bond [be] forfeit[ed] and [ABC] be responsible for paying the entire face amount [of the bond]." And "[t]he process in which ABC provides bail bonds when it requires additional security [from its customers]," proceeds as follows:

(1)    "An individual is criminally charged";

(2)    "A concerned family member or acquaintance will contact ABC, seeking a bail bond";

(3)    "ABC will have the family member or acquaintance come to [the] office where the details of the bond process are explained. Should the individual decide to go forward with the bond application, ABC will request that [he] act as a guarantor for the bond obligation that ABC undertakes";

(4)    "If the family member or acquaintance agrees, ABC will then have him . . . execute several documents";

(5)    "These documents contain detailed covenants and representations regarding the scope and extent of the guarantor's potential liability to ABC should the bond be forfeited. These covenants and representations include, without limitation: 1) a promise to indemnify and hold ABC harmless from every claim, demand, liability, cost, or charge that ABC might incur by virtue of having executed the bond; 2) a promise to place, upon demand, funds necessary to meet every claim, demand, liability, cost [or] charge that ABC might incur on account of having executed the bond; 3) a promise to remain liable to ABC so long

15

as there remain[s] any liability, potential liability, or loss resulting from the execution of the bond; and 4) . . . [p]rovide a security interest in the property pledged in connection with the bail application to secure the payment of all claims, demands, liabilities, costs, charges, legal fees";

(6)     "Should the guarantor have any questions regarding the scope or extent of their indemnity obligation to ABC, [he] will be told by ABC that [his] obligation includes not only the bond amount but also any and all fees, costs, and expenses ABC would incur in the event of bond forfeiture.  If asked, the guarantor will also be told that the total cost of these fees, costs, and expenses could total up to double the amount of the bond being posted"; and

(7)     "In certain situations, ABC will request additional collateral from a family member who is a property owner.  In these situations, the guarantor will, provide ABC with a deed of trust for property securing [his] indemnity obligation[].  Critically, each deed of trust contains an explicit representation that the pledged property forms no part of any property owned, used or claimed by grantor as exempted from forced sale under the laws of the [S]tate of Texas."

(Fourth alteration in original) (Internal footnotes and quotations omitted.) Moreover, once "[a] concerned family member or acquaintance" has finalized and executed the documents provided to him, "ABC will execute a bail bond on the [criminal] defendant['s] behalf."  At that time, ABC will also "file[] the deed[] of trust provided [by the concerned family member or acquaintance] in connection with the bond application in the Harris County real property records."  And when the obligation related to the bail bond "ha[s] been completely satisfied and/or terminated, ABC . . . file[s] a release of lien."

Appellants' assertion that ABC "sells bail bonding services" and does not engage in the "sell[ing]" of "the filing of deeds of trust" is unavailing. The pleadings and evidence establish that "ABC is in the bail bonding business," Schmidt is a "licensed professional bail bondsman," and the selling of bail bonds or bail bonding services, according to appellants, themselves, is dependent upon "the documents executed to protect the bondsman's financial interests should there be a bond forfeiture." To be sure, but for ABC approving of its customer's bond application and posting a bond, there would be no lien being filed in the Harris County property records. Thus, appellees' claims are against appellants, who are primarily engaged in the selling of goods or services, i.e., bail bonds or bail bonding services, and appellants engaged in the conduct on which appellees' claims are based, i.e., the improper filing of fraudulent and invalid deeds of trust or liens, in their capacity as the seller of bail bonds or bail bonding services. *See Castleman*, 546 S.W.3d at 688.

Next, appellees argue that the commercial speech exemption applies to their claims because the statement or conduct at issue in the instant case arises out of a communication or transaction involving the kind of services that appellants provide. *See id.* According to appellees, appellants' "act[s] of recording . . . fraudulent and invalid deeds of trust [are] a direct and virtually contemporaneous consequence from their act[s] of selling bail bonds [or bail bonding services] because the liens [filed by appellants] serve as a means to secure payment on the bond[s]" and "[t]he liens

17

are executed and created during the same time period in which the bond[s] [are] issued to [ABC's] customer[s], then recorded just days after."

As previously noted, Schmidt, a bail bondsman and the sole proprietor of ABC, testified, by affidavit, that when a concerned family member or acquaintance of a criminal defendant seeks a bail bond from ABC, that person executes several documents with ABC, including documents under which the person becomes "a guarantor for the bond obligation that ABC undertakes." "In certain situations, ABC will request additional collateral from a family member who is a property owner." Under such circumstances, ABC has the person execute a deed of trust for the particular property that he owns. Once the concerned family member or acquaintance has finalized and executed the documents provided to him by ABC, ABC then executes a bail bond on the criminal defendant's behalf and "files the deed[] of trust provided [by the concerned family member or acquaintance] in connection with [his] bond application in the Harris County real property records." And when "the guarantor's obligation[] to ABC ha[s] been completely satisfied and/or terminated, ABC . . . file[s] a release of lien." Further, ABC confirms that it remains "in possession of the application packet[]" that its customer has completed. Thus, appellants' statement or conduct at issue, i.e., the improper filing of fraudulent and invalid deeds of trust or liens, arises out of the commercial transactions

involving the goods or services, i.e., bail bonds or bail bonding services, that appellants provide. *See id.*

Finally, appellees argue that the commercial speech exemption applies to their claims because appellants "directed their fraudulent liens toward[] their customer base" and they put "the customer on notice that should [his] bond be forfeited, [a]ppellants would foreclose on the lien." Thus, appellees constituted the "intended audience because the deed[s] of trust [themselves were] used as . . . means to let . . . [a]ppellee[s] know that the debt[s] of their bond[s] w[ere] now connected to their homestead[s]." *See id.*

In contrast, appellants assert that appellees "made no claim and came forward with no evidence that the intended audience of [the] deed[s] of trust . . . [are] the same audience to whom ABC markets its bonding services." The lead opinion agrees with appellants, holding that appellants' "filings were made to put the general public on notice that certain properties were subject to liens" and "[t]hus, the intended audience of [appellants'] filings was the public at large or potential buyers of the encumbered properties, not [appellants'] potential or actual customers— persons who have obtained or need to obtain bail bond loans."

However, here, it is undisputed that the deeds of trust related to the properties owned by ABC customers and that the liens that appellants filed in the Harris County property records actually attach to the properties of such customers, including

19

appellees. A lien against a property owned by an ABC customer is, in part, appellants' attempt to secure a debt and ensure repayment of the bail bond that it has posted. *See Lien*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "lien" as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied"). So, the intended audience of that lien must include, at the very least, the person against whom the lien is filed, i.e., each appellee in the instant case. *See N. Cypress Med.*, --- S.W.3d ---, 2019 WL 2292630, at *4 (concluding intended audience of hospital lien necessarily included actual or potential buyer or customer, such as patient); *Tyler v. Pridgeon*, 570 S.W.3d 392, 398–99 (Tex. App.—Tyler 2019, no pet.) (hospital "was primarily engaged in the business of selling goods or services, that is, healthcare" and "the lien arose out of a commercial transaction involving [the hospital's providing] of healthcare to [patient], who was the intended audience of the lien"); *see also Berry v. ETX Successor Tyler*, No. 12-18-00095-CV, 2019 WL 968528, at *4 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.) (intended audience of hospital lien included patient who had received medical treatment at hospital).

Further, appellants admit that their primary goal is not to foreclose on appellees' homestead properties; rather, each lien is part of appellants' efforts to ensure repayment of the bail bond amount because once the obligation related to the bail bond "ha[s] been completely satisfied and/or terminated, ABC . . . file[s] a

release of lien." To be sure, appellees, as customers, are members of the lien's intended audience. *See N. Cypress Med.*, --- S.W.3d ---, 2019 WL 2292630, at *4; *Pridgeon*, 570 S.W.3d at 398–99; *Berry*, 2019 WL 968528, at *4; *see also Castleman*, 546 S.W.3d at 688.

Although the lead opinion concludes that appellees cannot be members of a lien's intended audience because appellees were not aware of the liens the moment that they were filed and attached to their properties, this is not a requirement for appellees to be members of the intended audience. In considering which persons constitute the "intended audience" in the instant case, this Court must look from the perspective of appellants, i.e., who *appellants* intended to be the audience of their statement or conduct.[12] *See Castleman*, 546 S.W.3d at 688; *see also City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994) (considering intended audience of residential sign from perspective of person "who put[] up a sign at her residence," not from perspective of who had actually seen sign). And it is hard to say that each appellee was not intended by appellants to be part of the lien's audience. Notably, the timing of when appellees became aware that liens had been attached to their properties is of no moment when this Court is examining who was the intended audience of the

---

[12] After examining who appellants intended to be the audience of their statement or conduct, this Court should then examine whether the members of the intended audience are the "actual or potential customers of [appellants]." *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688–89 (Tex. 2018).

21

lien.[13] We simply care whether appellees were meant to be members of the intended audience.

Finally, as a general matter, I note that the lead opinion construes the TCPA's commercial speech exemption very narrowly,[14] while at the same time advocating for a broader reading of other parts of the statute. In doing so, the lead opinion misses the big picture. *See Castleman*, 546 S.W.3d at 688 (imperative for courts not to construe statutes in way that reaches absurd or nonsensical result that Legislature could not have intended); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) (rejecting statutory construction that causes provision to be out of harmony or inconsistent with other provisions); *see also 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) (statute shall be construed to accomplish its purpose; when interpreting section must consider role in broader statutory scheme); *Cheniere Energy, Inc.*, 449 S.W.3d at 216 (explicit purpose of TCPA is to balance protection of First Amendment rights against rights of all individuals to file lawsuits to redress their injuries). As previously discussed, appellants are engaged in the business of providing bail bonds or bail bonding services. They expect each of their customers, who seek a bail bond, to fulfill his obligation to ABC should a bond be forfeited and

---

[13] It is obvious that appellees did actually learn of the liens attached to their properties because without appellees discovering the liens, this lawsuit would have never been filed.

[14] *But see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b) (TCPA to be construed liberally to fully effectuate its purpose and intent).

ABC be responsible for paying the face amount of the bond. As part of this process, appellants obtain a deed of trust for a customer's property in order to secure that customer's obligation. Once ABC executes a bail bond, appellants file the deed of trust provided by the customer in order for a lien to attach to the property owned by appellants' *actual* customer, i.e., each appellee. Liens against appellees' properties are liens against appellees to secure payment of a debt. This type of "speech" does no more than secure a commercial transaction in the types of goods or services that appellants provide and which are now the subject of appellees' claims. *See Castleman*, 546 S.W.3d at 690 (commercial speech exemption applies to "commercial speech which does no more than propose a commercial transaction" (internal quotations omitted)). Attaching freedom-of-speech protections to appellants' debt collection practice is an overreach and conflicts with this Court's recent holding in *North Cypress Medical*. --- S.W.3d ---, 2019 WL 2292630, at *3–5 (holding commercial speech exemption applied to case involving hospital lien); *see also Pridgeon*, 570 S.W.3d at 398–99.

Based on the foregoing, I conclude that appellees met their burden of establishing that the commercial speech exemption applies to their claims, and therefore, the TCPA does not apply to the instant case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). Accordingly, I would hold that the trial court did not err in denying appellants' motion to dismiss, and I would affirm the trial court's order

denying appellants' motion. Because the lead opinion does otherwise, I respectfully dissent. To the extent that the lead opinion affirms the trial court's order denying appellants' motion to dismiss as to appellees' claims to quiet title and for a declaratory judgment, albeit for different reasons, I concur in the outcome only.

Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Radack, C.J., dissenting in part from the judgment.

Countiss, J., dissenting in part and concurring in judgment only in part.

24