**Affirmed and Memorandum Opinion filed November 4, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00912-CV

## BOOSTER FUELS, INC., Appellant

## V.

## FUEL HUSKY, LLC D/B/A INSTAFUEL, Appellee

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2019-57856**

## MEMORANDUM OPINION

Appellee Fuel Husky, LLC d/b/a Instafuel ("Instafuel") sued Ugo Catry and appellant Booster Fuels, Inc. ("Booster") for misappropriation of trade secrets, conversion, and conspiracy to commit fraud. Booster moved to dismiss Instafuel's claims under the Texas Citizens' Participation Act ("TCPA"). The trial court denied the motion and Booster filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). In a single issue, Booster argues that the trial

court erred by failing to grant its motion to dismiss. We affirm the trial court's order.

## I. BACKGROUND

Instafuel and Booster each provide mobile fuel delivery services. Instafuel was founded in 2015 by Wisam Nahhas and Nour Baki. According to Instafuel's live petition, Instafuel's business model is distinctive because it has targeted commercial fleets as its customer base, whereas Booster originally focused on delivering fuel to individual commuters.

In the latter half of 2015, Ugo Catry approached Nahhas in Houston while claiming to work for Total Energy Ventures International, S.A.S. ("Total Energy") and conveyed an interest in becoming a potential investor.[1] Under the guise of being a potential investor, Catry requested Instafuel's business plans and trade secrets. In November 2015, and February 2018, before Instafuel shared information with Catry, Instafuel and Catry entered into non-disclosure agreement. Instafuel then provided Catry with its confidential pricing strategy, revenue model, and fleet target market. After continued communication between Catry and Instafuel, the parties entered into a second non-disclosure agreement in February 2018, after which Instafuel sent Cary additional information, including its customer lists and updated pitch deck.

In 2019, Instafuel discovered that Total Energy was an investor in Booster. Instafuel additionally learned that according to Booster's LinkedIn webpage, Catry was either advising or directly employed by Booster at the time he approached Nahhas about Instafuel's trade secrets. According to Instafuel, shortly after it disclosed its confidential customer list to Catry, Instafuel was informed by the

---

[1] In its appellate brief, Instafuel describes Total Energy as "the venture capital arm of one of the biggest oil and gas companies in the world."

customers on that list that Booster had reached out to them and tried to "poach" their business. Additionally, according to Instafuel's petition, "[i]n what appears to be a clumsy copy-and-paste project, Defendant Booster copied large swaths of Instafuel's distinctive pitch deck[2] provided to Defendant Catry and published this information in Defendant Booster's sales deck to potential clients, even erroneously claiming Instafuel's clients as its own."

On August 20, 2019, Instafuel sued Booster for conversion and misappropriation of trade secrets. On September 30, 2019, Booster filed an answer, asserting a general denial. On October 21, 2019, Booster filed a motion to dismiss pursuant to the TCPA. On November 4, 2019, Instafuel filed its second amended petition, wherein Instafuel alleged: "Defendant Booster Fuels has unlawfully gained access to Instafuel's trade secrets, either by accessing Instafuel's secure servers in Harris County in Houston, Texas directly or by way of Defendant Catry, who made fraudulent representations concerning Total Energy's intentions to become an investor in Instafuel," and added a claim against Booster for conspiracy to commit fraud. A hearing on Booster's motion was held on November 11, 2019. The motion was denied by the trial court the same day.

Booster timely appealed.

## II.    ANALYSIS

### A.    TCPA FRAMEWORK

Codified in chapter 27 of the Civil Practice and Remedies Code, the TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011.

---

[2] "A pitch deck is a brief presentation . . . used to provide [an] audience with a quick overview of [a] business plan. [A business] will usually use [a] pitch deck during face-to-face or online meetings with potential investors, customers, partners, and co-founders." *Available at* https://pitchdeck.improvepresentation.com/what-is-a-pitch-deck (last visited November 1, 2021).

3

The purpose of the statute is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *In re Lipsky*, 460 S.W.3d at 589; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

To effectuate the statute's purpose, the TCPA provides a three-step decisional process to determine whether a lawsuit or claim should be dismissed under the statute. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). Under the first step, the trial court must dismiss the action if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *Creative Oil & Gas,* 591 S.W.3d at 132; *In re Lipsky*, 460 S.W.3d at 586–87. "But under the second step, the court may not dismiss the action if the non-moving party 'establishes by clear and specific evidence a prima facie case for each essential element of the claim.'" *Creative Oil & Gas,* 591 S.W.3d at 132 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). "Under the third step, the movant can still win dismissal if he establishes 'by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d)).

The evidence the trial court considers in determining whether a legal action should be dismissed under the TCPA includes the pleadings and affidavits filed by the parties. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *see also Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

## B.    STANDARD OF REVIEW

Whether the TCPA applies to a particular claim is an issue of statutory

interpretation that we review de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *see also Comcast Corp. v. Hous. Baseball Partners, LLC*, No. 14-20-00043-CV, 2021 WL 2470378, at *8 (Tex. App.—Houston [14th Dist.] June 17, 2021, pet. filed). We view the pleadings and evidence in the light most favorable to the non-movant. *Stallion Oilfield Servs., Ltd. v. Gravity Oilfield Servs., LLC*, 592 S.W.3d 205, 214 (Tex. App.—Eastland 2019, pet. denied); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 214-15 (Tex. App.—Houston [1st. Dist.] 2014, no pet.); *see also Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.).

We also review issues of statutory construction de novo. *Youngkin*, 546 S.W.3d at 680. When construing a statute, our objective is to determine and give effect to the Legislature's intent. *Youngkin*, 546 S.W.3d at 680 (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

## C.  APPLICATION

In its sole issue, Booster challenges the trial court's denial of its TCPA motion to dismiss. In doing so, Booster raises four sub-issues:

1. the TCPA applies to Instafuel's claims;

2. Instafuel failed to establish a prima facie case as to each essential element of its claims;

3. the commercial speech exemption is inapplicable to this case; and

4. the 2019 TCPA amendment is inapplicable to the present case because Instafuel's petition was filed before September 1, 2019.

We will first briefly address the fourth sub-issue regarding which version of

5

the TCPA is applicable to the present case. The 2019 act amending the TCPA was passed by the legislature on May 17, 2019, approved by the governor on June 1, 2019, and took effect on September 1, 2019, and the act applies only to an action filed on or after the effective date of the act. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11–12, 2019 Tex. Gen. Laws 684, 687. Because Instafuel filed its original petition on August 20, 2019, we conclude that the September 1, 2019 amendment to the TCPA is not applicable to the present case and the previous version controls. *See id.*; *Youngkin*, 546 S.W.3d at 680. Accordingly, we will refer to the pre-amendment version of the TCPA.

Next, we will address Booster's first sub-issue regarding whether the TCPA applies to Instafuel's claims.

### 1. INSTAFUEL'S SUIT IS NOT BASED ON BOOSTER'S RIGHT OF FREE SPEECH

As the movant, Booster had the burden to show by preponderance of the evidence that Instafuel has asserted a "legal action" that is based on, relates to, or is in response to the Booster's exercise of one of the three rights delineated in the statute. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 469 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc); Tex. Civ. Prac. Rem Code Ann. § 27.005(b). Booster argues that Instafuel's claims are based on its rights of free speech and association in communicating regarding investment with non-party Total Energy.

The TCPA defines a "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." Tex. Civ. Prac. Rem Code Ann. § 27.001(6).[3]

---

[3] As of September 1, 2019, the statute provides that "legal action" does not include "a procedural action taken or motion made in an action that does not amend or add a claim for legal, equitable, or declaratory relief"; "alternative dispute resolution proceedings"; or "post-judgment enforcement actions." § 27.001(6)(A)–(C). Because this suit was filed before September 1, 2019,

6

This definition appears to encompass any "procedural vehicle for the vindication of a legal claim." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 9 (Tex. 2018). "The definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis." *Better Bus. Bureau of Metro. Dall., Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6)). We conclude that Instafuel's lawsuit is a "legal action" as defined under the TCPA. *See id.*

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "[m]atter of public concern" is defined as "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).[4]

---

the previous version of the statute controls. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011).

[4] For cases filed on or after September 1, 2019, "Matter of public concern" is defined as:

(7) "Matter of public concern" means a statement or activity regarding:

    (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

    (B) a matter of political, social, or other interest to the community; or

    (C) a subject of concern to the public.

Tex. Civ. Prac. & Rem. Code Ann. § 27.001.

The supreme court recently explained that not every communication related somehow to one of the broad categories set out in § 27.001(7) always regards a matter of public concern. *Creative Oil & Gas,* 591 S.W.3d at 137. In *Creative Oil & Gas*, Lona Ranch filed a TCPA motion to dismiss the opposing parties' counterclaims, arguing statements to third parties regarding the lease between the parties were an exercise of the right of free speech meriting dismissal, and regarding the filing of the lawsuit, the action was an exercise of the right to petition requiring dismissal under the TCPA. *Id.* at 130–31. The supreme court, in concluding that the statements did not fall within the free speech prong of the TCPA, determined the communications to third parties regarding the lease did not involve matters of public concern. *Id.* at 136. In considering whether the claims at issue are matters of public concern, the high court clarified that a matter of public concern for purposes of the TCPA must involve more than the private pecuniary interests of the parties, and "commonly refers to matters 'of political, social, or other concern to the community'" as opposed to purely private matters. *Id.* at 135 (citing *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). Further, the court stated, "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* at 137.

This court has previously applied the *Creative Oil & Gas* analysis in holding that communications directed to an audience of existing customers and tenants regarding a private business dispute are not a matter of public concern for purposes of TCPA applicability. *Bowman v. Fortitude Consulting Grp., Inc.*, No. 14-19-00686-CV, 2020 WL 3967807, at *4 (Tex. App.—Houston [14th Dist.] July 14, 2020, no pet.) (mem. op.); *see also Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, No. 14-18-00740-CV, 2020 WL 5087826, at *5

8

(Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) (concluding that publicly traded company failed to show by preponderance of the evidence that the amount owed pursuant to a judgment was a matter of public concern for purposes of the TCPA).

Booster asserts that "Instafuel's lawsuit is expressly designed to impinge and 'chill' Booster's' right of free speech on a matter of public concern." In its motion to dismiss, Booster alleged:

> The actions that Instafuel alleges Booster engaged in all necessarily involve the making of "a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic, regardless of whether the communication is made or submitted publicly or privately." As alleged by Instafuel, Booster communicated orally and in writing with potential customers and with one of its investors, non-party Total Energy. In short, Instafuel's Petition is focused almost entirely on Booster's right to speak with potential customers, as well as the right to speak with its own investor, Total Energy.

More specifically concerning matters of public concern, Booster argued:

> Furthermore, a commercial service that provides the direct delivery of fuel to consumers is undoubtedly a "matter of public concern" as defined in the TCPA. The services at issue touch and concern multiple environmental, economic, or community issues of well-being and import to the community and concern a good, product, or service in the marketplace. The expansion of an industry that provides direct access to fuel for vehicles is a matter of economic well-being, as fueling vehicles is an important economic concern. Similarly, the sale of fuel is a highly regulated industry that has a direct effect on the environment. In fact, to operate its business, Booster must employ fuel delivery drivers who have a Texas Hazardous Materials Endorsement on their driver's license. As such, competition in this industry is a matter of both economic and environmental concern which thus makes it a "matter of public concern" under the TCPA.

(internal citations omitted). We disagree.

9

Booster's communication with potential customers and employment of drivers with a Texas Hazardous Materials Endorsement on their driver's license is not a matter of health, political, economic or social concern to the community at large. *See Creative Oil & Gas*, 591 S.W.3d at 135. Likewise, their communication was not "related to a matter of public concern." Rather, Booster and the potential customers were private parties engaged in private communications that solely affected their private interests. Likewise, any communication between Booster and Catry and Total Energy were private communications between private parties that affected their private, pecuniary interests. Thus, we conclude that the alleged communications are not a matter related to a public concern. *See Creative Oil & Gas*, 591 S.W.3d at 137; *see, e.g.*, *Bowman*, 2020 WL 3967807, at \*4 (concluding that allegation that party "interrupted and interfered with Tenants' businesses" was private communication not of public concern); *see also Collaborative Imaging, LLC v. Zotec Partners, LLC*, No. 05-19-01256-CV, 2020 WL 3118614, at \*3 (Tex. App.—Dallas June 12, 2020, pet. denied) (mem. op.) ("Private communications are indeed sometimes covered by the TCPA . . . [b]ut to be covered by the TCPA, those communications must involve environmental, health, or safety concerns that have public relevance beyond the pecuniary interests of the private parties involved.") (internal citation omitted).

We next turn to whether Instafuel's claims relate to Booster's exercise of its right of association.

### 2. INSTAFUEL'S SUIT IS NOT BASED ON BOOSTER'S RIGHT OF ASSOCIATION

In addition to implicating its right of free speech, Booster argues that Instafuel's suit is based on, relates to, or is in response to Booster's exercise of the right of association.

The applicable version of the TCPA defines an exercise of the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001). We recently examined this definition at length in *Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 123 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Midtown brought tort and contract claims against Republic and several third-party defendants in connection with a failed restaurant venture. The Republic parties filed a TCPA motion to dismiss, arguing Midtown's claims implicated their right of association. *Id*. at 121.

Analyzing this contention, we focused on which "common interests" fall within the TCPA's definition of "right of association." *See id*. at 125–27. Relying on an opinion from the Fort Worth Court of Appeals, we recognized that "common" generally is subject to a primary and secondary definition:

| | |
|---|---|
| Primary definition: | "of or relating to a community at large <as a family unit, social group, tribe, political organization, or alliance>: generally shared or participated in by individuals of a community: not limited to one person or special group" |
| Secondary definition: | "marked by or resulting from joint action of two or more parties: practiced or engaged in by two or more equally." |

*Id*. at 125 (quoting *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576 (Tex. App.—Fort Worth 2019, pet. denied)). As we noted, the secondary definition would broadly apply "to any interests common to at least two people." *Id*.

We examined these definitions in conjunction with the TCPA's purpose "to encourage and safeguard the constitutional rights of persons to petition, speak

11

freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id*. (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002). We concluded that "[a]pplying the primary definition of 'common' would serve the TCPA's purpose, whereas defining 'common' to refer to *any* interests shared by at least two people would not encourage or safeguard the right to associate freely and would undermine the statute's purpose of protecting the right to file meritorious lawsuits." *Id*. (emphasis in original).

Applying this conclusion, we noted that Midtown's claims were premised on the following "communications": (1) Midtown's contract with the Republic parties, (2) alleged representations by the Republic parties that they would fund construction and operation of the restaurant, and (3) disagreements about Midtown's accounting. *Id*. at 126–27. Concluding these communications did not constitute an exercise of the right of association, we held that "[t]hese communications concern only a private transaction between private parties, rather than a matter of 'common interest' as that expression is used in the applicable version of the TCPA." *Id*. at 127; *see also Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653–54 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (relying on *Kawcak* and concluding that claims alleging defendants conspired to commit theft or conversion did not implicate the defendant's exercise of the right of association);[5] *Kawcak*, 582 S.W.3d at 571, 588

---

[5] As we noted in *Republic Tavern*, an argument can be made that this court's opinion in *Reeves v. Harbor Am. Cent., Inc.*, No. 14-18-00594-CV, 2020 WL 2026527 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. denied), conflicts with our reasoning in *Bandin*. *See Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 618 S.W.3d 118, 126 n.17 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Assuming without deciding that such conflict exists, we held that "*Bandin*, as the earlier precedent, would control over later cases that do not distinguish or purport to apply it, absent a contrary decision by a higher court or this court sitting en banc." *Id*.

(concluding that the exercise of the right of association was not implicated by claims that Kawcak and another individual conspired in tortious conduct such as a breach of fiduciary duty).

Similarly, in *Marshall v. Marshall*, Nos. 14-18-00094-CV & 14-18-00095-CV, 2021 WL 208459 (Tex. App.—Houston [14th Dist.] Jan. 21, 2021, pet. filed) (mem. op.), we relied on the primary definition of "common" to conclude that breach of fiduciary duty claims premised on the merger of two private trusts did not implicate the TCPA's right of association. *See id.* at *1–2, *8. Holding that the TCPA's definition of the "exercise of the right of association" did "not encompass all communications in furtherance of a civil conspiracy or to commit tortious acts," we noted that applying a broader definition "would thwart a meritorious lawsuit any time a plaintiff alleges two or more persons jointly committed a tort." *Id.* at *8.

This construction aligns with conclusions reached by several of our sister courts of appeals, in which they held that the TCPA's use of "common interests" requires more than communications made as part of a private transaction. *See, e.g.*, *Segundo Navarro Drilling, Ltd. v. San Roman Ranch Mineral Partners, Ltd.*, 612 S.W.3d 489, 493–96 (Tex. App.—San Antonio 2020, pet. denied) ("Like the *Kawcak* Court, we conclude that this definition of 'common'—one that suggests a communal or public interest, rather than a private interest shared solely by a select few—is more congruent with both the TCPA as a whole and with our canons of statutory construction"); *Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *6 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.) ("[T]he term 'common interest,' as used in the TCPA, means something more than allegedly tortious communications between individuals in the pursuit of a private business endeavor."); *Gaskamp*, 596 S.W.3d

at 476 (concluding that "the proper definition of 'common' in the phrase 'common interests' is 'of or relating to a community at large: public'"; therefore, claims premised on the misappropriation of trade secrets for a competing business and conspiring to commit related torts did not fall within this definition); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426–27 (Tex. App.—Dallas 2019, pet. denied) (citing *Kawcak* and concluding that, because the text messages underlying the claims "were private communications related to an alleged conspiracy between two men and did not involve public or citizen's participation, it would be 'illogical' to apply the TCPA to those communications"); *see also Blue Gold Energy Barstow, LLC*, 2020 WL 1809193, at *6.

Here, Booster asserts that Instafuel's claims are premised on associations by Booster with its potential customers and with its investor, Total Energy. More specifically, Booster argues that its communications with Total Energy sought to advance their "common interest in providing and expanding Booster's innovative fuel delivery service." Similarly, Booster argues its association with its customers and potential customers was for the common interest of "collectively promot[ing] the sale and purchase of fuel delivery services."

However, guided by the precedents discussed above, we conclude that Instafuel's claims do not implicate communications that promote "common interests" as that phrase is used in the TCPA's definition of "right of association." Rather, Booster alleged communications related to a private business endeavor— an interest shared only by a select few. These communications facilitated an alleged conspiracy between Catry and Booster to steal trade secrets and "poach" Instafuel's business; the communications did not involve the public or the community at large.[6] As such, we conclude that the communications do not

---

[6] In its reply brief, Booster argues that according to our Court's precedent, the TCPA can

14

constitute an exercise of the right of association protected by the TCPA. *See Bandin,* 590 S.W.3d at 653–54; *Gaskamp*, 596 S.W.3d at 476; *Dyer*, 573 S.W.3d at 426–27; *see also Marshall*, 2021 WL 208459, at \*8; *Republic Tavern*, 2020 WL 7626253, at \*6; *Segundo Navarro Drilling, Ltd.*, 612 S.W.3d at 493–96; *Blue Gold Energy Barstow*, LLC, 2020 WL 1809193, at \*6.

### 3. SUMMARY

Because Booster failed to meet its initial burden under the TCPA to establish that Instafuel's claims are based on, related to, or in response to Booster's exercise of its right of free speech or right of association, we need not address sub-issues two and three. *See* Tex. R. App. P. 47.1. We overrule Booster's sole issue.

### III. CONCLUSION

We affirm the trial court's order denying Booster's TCPA motion to dismiss.

---

apply to protect the conduct of alleged tortfeasors who have conspired together to commit tortious conduct to advance their own business interests. *See Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at \*8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (concluding that the TCPA applied to portions of plaintiff's tortious interference claims). However, we find Booster's reliance on *Abatecola* unpersuasive.

As we mentioned earlier, in the time since our court issued *Abatecola*, the Texas Supreme Court has clarified that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019). Despite Booster's argument that its services implicate environmental and community well-being, ultimately, the dispute involves private communications involving the pecuniary interest of private parties. Furthermore, we note that in light of *Creative Oil & Gas*, our sister court has disagreed with our holding in *Abatecola*. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc). Therefore, we find Booster's reliance on *Abatecola* to be unconvincing.

/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Spain, Hassan, and Poissant.